WESTINGHOUSE MACH. CO. et al. v. GENERAL ELECTRIC CO. et al.

(Circuit Court of Appeals, Second Circuit. June 14, 1913.)

No. 257.

PATENTS (§ 79*)—RIGHT TO PATENT—USE OF INVENTION IN FOREIGN COUNTRY.
Under Rev. St. § 4923 (U. S. Comp. St. 1901, p. 3396), which expressly provides that a patent shall not be held to be void on account of the invention or discovery, or any part thereof having been known or used, in a foreign country before the patentee's invention or discovery thereof, if it had not been patented or described in a printed publication, for the purpose of defeating a patent application a previous reduction to practice of the invention in a foreign country is a nullity unless it was patented or described in a printed publication.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 101; Dec. Dig. § 79.*]

This cause comes here upon appeal from a decree of the District Court, Northern District of New York dismissing a bill in equity. The bill was brought under section 4915, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 3392), which provides that whenever a patent on application is refused either by the Commissioner of Patents or by the Court of Appeals of District of Columbia, upon appeal from the Commissioner, the applicant may have remedy by bill in equity, and that in such suit the court may adjudge that such applicant is entitled to receive a patent for his invention.

The opinion of Judge Ray in the District Court will be found in 199 Fed. 907; that of the Court of Appeals of the District of Columbia in De Kando v. Armstrong, 169 O. G. 1185.

Gifford & Bull, of New York City (J. Edgar Bull, of New York City, of counsel), for appellants.

Charles Neave, of New York City (Albert G. Davis and A. A. Buck, both of Schenectady, of counsel), for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. This case grows out of an interference in the Patent Office entitled De Kando v. Armstrong, which was decided adversely to De Kando and his assignee, the Westinghouse Machine Company. The interference was between an application of De Kando filed July 3, 1906, and a patent to defendant Armstrong No. 811,758, dated February 6, 1906, on an application filed June 28, 1905.

There is controversy as to some of the important facts, but in view of the disposition we make of this cause we shall state them as they are found by the Court of Appeals, District of Columbia, and by the District Judge, with some additional statements of them which complainant claims are established by the proof. In thus restating them it must be understood that we have not examined into the conflicting evidence or reached our own conclusions as to whether the testimony supports the findings of fact; our view of the law making it unnecessary for us to do so.

Quoting from the opinion below the facts there found are:

"(1) That De Kando actually made his invention in a foreign country and reduced it to actual practice and put it in actual use, prior to the spring of 1904 on the Valtellina Railway in Italy.

"(2) It was therefore an invention which could be and was seen, understood, and known to be practical. There was not only the patentable conception but the idea of means and means.

"(3) That on March, 1904, Waterman went from the United States to Europe and met De Kando at Budapest, where the details of the invention were explained to him, and then, proceeding to Italy, Waterman saw the invention in actual use. In addition De Kando then furnished Waterman with an elaborate written description of the invention.

"(4) It appears from the evidence that Waterman was learned and skilled and fully capable of fully understanding and that he did understand the invention.

"(5) Waterman therefore 'knew' that the invention had been conceived and actually made and reduced to actual and successful practice.

"(6) That Waterman not only brought the information he had gained in Europe with him to the United States, when he arrived May 5, 1904, but also the said written description of such invention and notes which he had made relating to such invention while in Europe.

"(7) That Waterman made a written report as to this invention to Stillwell June 7, 1904, and during the year following he described same in the United States to a number of electrical engineers of standing, all capable of understanding same, and June 19, 1905, Waterman explained the invention to the American Institute of Electrical Engineers in the United States.

"(8) Prior to 1901 or 1902 Armstrong had conceived the same invention and in * * * June, 1905, he filed his application for a patent. There is no claim or pretense that Armstrong exercised reasonable diligence, or any diligence, or that he made any effort whatever to reduce his invention to practice prior to filing his application for a patent."

Defendants, it may be noted, especially controvert the findings 3, as to what Waterman saw in Italy, and 8, as to the date of Armstrong's conception and the measure of his diligence. Waterman was an emi-

nent electrician who went abroad to inform himself as to De Kando's invention on behalf of parties here who contemplated buying it. The testimony warrants a further finding of fact which complainant suggests, viz., that:

"(9) The knowledge of De Kando's invention and its use abroad was communicated by De Kando to Waterman for the specific purpose of introducing such knowledge into the United States and of having the invention put into use in the United States."

Whatever other questions there are in the case, and many have been argued, it is manifest that the fundamental and crucial one is whether upon the facts shown Armstrong was entitled to the grant of his patent; it not being disputed that his invention and De Kando's are substantially the same, nor that the invention of each was made independently of any knowledge of the other's. If Armstrong's patent was properly issued, that ends the cause. The question thus presented involves the construction of two sections of the United States Revised Statutes, which have been frequently before the courts:

"Sec. 4886. Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application, and not in public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceedings had, obtain a patent therefor."

"Sec. 4923. Whenever it appears that a patentee, at the time of making his application for the patent, believed himself to be the original and first inventor or discoverer of the thing patented, the same shall not be held to be void on account of the invention or discovery, or any part thereof, having been known or used in a foreign country, before his invention or discovery thereof, if it had not been patented or described in a printed publication." U. S. Comp. St. 1901, pp. 3382, 3396.

The proposition of law for which complainants contend is that De Kando's date of invention in this country is May, 1904, when Waterman, arriving here with knowledge of the completed invention, disclosed that knowledge to others here skilled in the art capable of understanding the same. That by reason of his knowledge and disclosures to others in this country prior to June 28, 1905, the invention was "known" in the legal sense in this country before Armstrong's application was filed. This proposition has been discussed at great length in the opinions of the two judicial tribunals which have had to do with this case; we are inclined to affirm on the opinion of the Court of Appeals of the District of Columbia, which, in substance, holds that, for the purpose of defeating a patent application, reduction to practice in a foreign country is a nullity unless the invention is patented or described in a printed publication.

If section 4886 stood alone, we might be inclined to the conclusion that upon this record Armstrong was not entitled to a patent because although, prior to his date, his art or machine had not been used here, it was known by others in this country. A machine is certainly knowable when its various component parts are brought together and, co-

operating with each other, function successfully. De Kando's device was knowable in this sense when it was installed in Italy. It would become known to any competent person who examined it, saw what its component parts were and what function it performed. Waterman, upon the facts as found above, acquired that knowledge and he carried his knowledge with him wherever he went. When he was here he was a person in this country by whom the De Kando device was known. And when he imparted his knowledge to others here they also became persons in this country by whom the De Kando device was known. Considering this section only, it might seem to make little difference where the knowable machine be located, provided the persons who know it are themselves in this country.

But the Patent Law is contained in many sections, and they must be construed together to get at the precise code which they set forth. Section 4886 states generally the conditions which must exist in order to entitle an inventor to the grant of a patent. Section 4923 deals specifically with the effect of knowledge and use in a foreign country, and it makes no distinction whether such use is made or such knowledge is acquired by persons who, after using the thing or acquiring the knowledge, remain abroad or come here. This section (4923) provides that the patent taken out by an applicant for the same thing here shall not be void on account of such knowledge or use unless the invention had been patented or described in a printed publication. As we construe this section, reduction to practice in a foreign country can never operate to destroy a patent applied for here, however widely known such reduction to practice may be, either among foreigners or among persons living here, unless the invention be patented or described in a printed publication. To that extent section 4923 qualifies the language of section 4886, which without such qualification might well lead to a different result.

The decree is affirmed, with costs.