# LORIMER v. ERICKSON.

---

PATENTS; INTERFERENCE; BURDEN OF PROOF; REDUCTION TO PRACTICE; DILIGENCE.

1. The fact that one of the parties to an interference has a patent gives him no advantage in an interference over the other party, where the

patent was issued while the application of the other party was pending; but where the latter was the last to file, the burden of proof is upon him.

2. In an interference proceeding the making and operation in a foreign country by one of the parties, of a device embodying the invention of the issue, which he conceived in this country, will not constitute an actual reduction to practice. (Following *DeKando* v. *Armstrong*, 37 App. D. C. 314.)

3. Diligence in a particular case depends upon special facts and circumstances attending it.

4. In an interference involving improvement in automatic telephone apparatus, lack of diligence is not shown on the part of the senior party (whose adversary conceived, filed and reduced to practice in December, 1906) where the evidence is to the effect that the senior party conceived and disclosed the invention in this country in 1904, went to France in the spring of 1905 to carry out a contract between his employer and the French government, and there established a shop and manufactured the device and put it into successful operation in connection with a French telephone system; returned to the United States early in November, 1905, and on the 18th of that month wrote to a patent attorney, who had been the attorney for a company which held the right to his inventions, to take up the matter of applying for a patent; found that this attorney had been superseded by another, with whom he took up the matter in January, 1906; and where it appears that from that time until April, 1906, when the application was filed, the attorney was working on it and other applications of the same party; and there is nothing to show that he concealed the invention or intended to abandon it.

No. 1019.  Patent Appeals.  Submitted January 18, 1916.  Decided March 6, 1916.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.      *Reversed.*

The facts are stated in the opinion.

*Mr. D. C. Tanner, Mr. J. G. Roberts,* and *Mr. R. O. Hinkle* for the appellant.

*Messrs. Bulkley & Swenarton* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding involving rival claims to the invention of a device for a measured telephone system.

The issue is embraced in the following two counts:

"1. In a substation telephone, a switch-hook, a conversation meter, and a press-button therefor, a rotary circuit-changing automatic call-sending device and means locking said press-button except after operation of said call-sending device and while said switch-hook is elevated.

"2. In a substation telephone, automatic impulse-governing means for sending a call, means for recording a call, locking means for said call recording means, and means associated with said call sending means for unlocking said call recording means."

John Erickson's application was filed December 6, 1906.

George W. Lorimer has a patent issued April 11, 1911, upon an application filed April 13, 1906.

His patent having issued with Erickson's application pending in the Office gives him no advantage over the latter.

The burden of proof is, however, upon Erickson as the last to file application.

The invention relates to improvements in automatic telephone apparatus, and in particular to a mechanical counting device or meter in combination with parts of the substation apparatus by means of which the subscriber may record his own calls. It includes means for normally locking the counting device and for unlocking the same upon initiating a call.

As disclosed by Lorimer, in whose application claims corresponding to the counts of the issue were first presented, the locking mechanism for the meter is mechanically associated with and controlled by parts of the mechanism of the calling device.

As disclosed by Erickson, the locking mechanism is controlled by an electro-magnetic device which is responsive, in its operation, to the current impulses transmitted from the calling device to the central station switches.

The Examiner of Interferences found that Lorimer conceived the invention and disclosed it during the year 1904, and that he made a complete machine which he operated successfully in Paris, France.

This machine was built in Paris on the plan conceived by him before leaving the United States, and was there completely tested.

He found also that Erickson, who claimed an earlier conception, should be confined to the date of December 9, 1905, when he built and tested his apparatus. He denied the legal effect of Lorimer's reduction to practice in Paris, but, finding that he was the first to conceive, and that he was not lacking in diligence when his rival entered the field, awarded him priority.

On appeal the Examiners in Chief agreed with the Examiner of Interferences that Lorimer was the first to conceive; that Erickson was entitled to his date of conception and reduction to practice at least as early as December 14, 1905. They agreed also that no effect could be given to Lorimer's reduction to practice in Paris, but they disagreed with the Examiner of Interferences as to Lorimer's diligence, and reversed his decision awarding priority to Lorimer.

The Commissioner on appeal to him agreed that Lorimer was the first to conceive, but agreed with the Examiners in Chief that he was not in the exercise of diligence when Erickson entered the field, and affirmed their decision awarding priority to Erickson.

We agree with the tribunals of the Patent Office that Lorimer was the first to conceive, and also that his reduction to practice in France cannot be taken advantage of in this country as the actual reduction to practice. *DeKando* v. *Armstrong,* 37 App. D. C. 314–321.

The question turns then upon Lorimer's claim of diligence in prosecuting his invention at the time of Erickson's entry into the field.

Lorimer went to France in the spring of 1905, carrying his sketch of the invention with him, and there erected a shop,

manufacturing the device, and put it in successful operation in connection with a French telephone system.

He returned to the United States early in November, 1905; on November 18th he wrote to a patent attorney who had been the attorney for the Lorimer Automatic Telephone Company, which held the right to Lorimer's inventions, asking him to take up the matter of an application for the patent of his new invention. This attorney, it seems, had about that time been superseded by another, with whom Lorimer took up the matter of the application on January 10, 1906, and submitted to him a detailed sketch in connection with the older devices with which the new invention was to be operated.

From that time until April 13, 1906, when the application was filed, the attorney was working on this and other applications of Lorimer's. This attorney represented the Lorimer Automatic Telephone Company, which owned all the inventions of Lorimer, and he was under obligation to act through him, and he seems to have conducted the matter of preparation of the application without undue delay.

Diligence in the particular case depends upon the special facts and circumstances attending it. It is quite clear that Lorimer never gave up the invention. He carried it to France with him, where he was engaged in filling a contract of his employers with the French government, and there constructed it and tested it completely with the automatic telephone system then installed.

Appreciating the importance of the invention, he immediately upon his return to the United States disclosed it to the patent attorney who had theretofore prosecuted all of his applications, with a view to having a patent applied for, not knowing that this attorney had been superseded, and shortly thereafter he took it up with the new attorney of the Lorimer Automatic Telephone Company in Chicago, giving him a sketch and full explanation as early as January 10, 1906. This was followed without undue delay by the attorney, and the application prepared and was filed April 13, 1906. He was not concealing the invention, nor did he show any intention to abandon it. The

circumstances do not justify the application of the strict rule of some of the cases relied on by Erickson, but would seem to be covered by the more liberal rule applied in cases where facts are of an analogous nature. *O'Connell* v. *Schmidt,* 27 App. D. C. 77–83; *Mead* v. *Davis,* 31 App. D. C. 590.

In view of all of the circumstances of the case we conclude that Lorimer was not lacking in diligence.

The decision appealed from will be reversed, and the clerk will certify this decree to the Commissioner of Patents as required by law.                                                    *Reversed.*