23 C.C.P.A.(Patents)

### WILSON et al. v. SHERTS et al.
### Patent Appeal No. 3565.

Court of Customs and Patent Appeals.
Feb. 17, 1936.

William J. Belknap, of Detroit, Mich. (Joseph H. Milans, of Washington, D. C., of counsel), for appellants.

James C. Bradley, of Pittsburgh, Pa. (Olen E. Bee, of Pittsburgh, Pa., of counsel), for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner of Interferences, awarding priority of invention upon all the counts in issue to appellees.

The counts are eight in number, from 1 to 8, inclusive; counts 1, 3, .and 6 are illustrative and read as follows:

"Count 1. A process of treating a laminated plate made up of alternating sheets of glass and cellulose plastic having their opposing surfaces secured together so as to seal the joint at the edges of the sheets, which consists in heating the edges of the plate so as to soften the plastic and applying fluid under pressure in direct contact with the edges of the plate so as to force the edges of the plastic inward."

"Count 3. A process of treating a laminated plate made up of alternating sheets of glass and cellulose plastic having their opposing surfaces secured rigidly and solidly together, which consists in submerging the plate in a bath of pyroxylin plastic solvent in direct contact with said plate throughout, raising the temperature of the bath to a point at which the plastic is softened and applying pressure to the bath."

"Count 6. A process of compositing glass and plastic reinforcing sheets which consists in preliminarily cementing such sheets immovably together so as to seal the joints at the edges of the sheets, and then exposing the plate thus formed in a bath of solvent for the plastic contacting directly with the surface of the plate having a temperature sufficient to soften the plastic and under pressure in such manner that the solvent contacts directly with the surface of the plate throughout."

The interference is between a patent to appellees, No. 1,781,084, issued November 11, 1930, application for which was filed October 18, 1929, and an application of appellants, Serial No. 416,768, filed December 26, 1929. The invention involved in said application of appellants was accorded a constructive reduction to practice as of the date of a British provisional application filed March 18, 1929, in accordance with section 4887, R.S., as amended, 35 U. S.C. § 32 (35 U.S.C.A. § 32), and international convention. That appellants are entitled to said last-named date for constructive reduction to practice of the invention is not questioned in this case.

It is stated in the specification of the patent to appellees that it is a continuation in part of the patentees' prior application, Serial No. 353,720, filed April 9, 1929.

The subject-matter of the invention is concisely stated by the Board of Appeals in its decision as follows:

"The subject-matter of the counts is that of a process of treating or making laminated safety or shatterproof glass of the type comprising two sheets of glass united to an interposed sheet of transparent tough material generally of celluloid or cellulose derivative. The essential feature of improvement in this method comprises a step of subjecting the assembled glass either previously made, or as a step in the manufacture, to the direct pressure of a fluid without any covering material. Heat and pressure may be applied at the same time. Some distinction has been made between the conception of treating a previously made product in which the edge had become separated slightly, for the purpose of filling up the cavity at the edge, on one hand, and the original treatment of assembled sheets to pressure in such bath as a step in completing the union of the sheets.

"Counts 1 and 2 include the expression 'to force the edges of the plastic inward.' This seems to relate to some possible research on the parts of Sherts and Hamill particularly directed to the repair of sheets which had separated slightly at the edge. It appears from the record that Sherts and Hamill first endeavored to devise a process for such purpose particularly but that they however soon applied such treatment to new work.

"This method is intended to replace the prior commonly employed method of enclosing the assembled sheets in a rubber bag, exhausting the air from the bag and then subjecting the bag and contents to exterior fluid pressure. It appears that such treatment exerted more pressure adjacent the edges of the assembled sheets than at the central portions, tending to thereby spring the edges of the glass sheets towards each other and squeeze celluloid out from between the plates at the edges thereby leaving the glass sheets under stress at the edges tending after a time to cause an edge separation. It also possibly made some difference in the case of repair of sheets whether solvents for the celluloid were employed as the pressure liquid in distinction to non-solvent liquids. Solvents tend to soften and swell up the celluloid where it could come in contact therewith if the edges were separated."

Appellees are residents of the United States, and all of their activities with respect to the invention occurred in this country. Appellants are residents of England and most of the activity upon their part occurred in that country, where the invention was first conceived. Appellants, however, claim the benefit of a disclosure of their invention as brought to this country by one Col. Clare in October, 1928. Benefit of this disclosure as a conception in this country as to all of the counts except counts 1 and 2 has been accorded appellants as of said October, 1928; with respect to counts 1 and 2, both Patent Office tribunals found that the invention embraced therein was not disclosed in this country prior to appellees' conception and reduction to practice.

Col. Clare immediately returned to England and, so far as the record shows, there was no further activity by appellants in this country until the preparation and filing of their application, December 26, 1929. Both Patent Office tribunals found that appellees conceived and disclosed the invention and reduced it to practice in December, 1928. If the Board of Appeals correctly found conception and reduction to practice of the invention by the appellees in December, 1928, then the burden was upon the appellants to show conception as to all of the counts prior to December, 1928, and diligence in reducing the invention to practice from immediately prior to appellees' entry into the field to March 18, 1929, the date of the filing of said British provisional application.

That appellants did, in October, 1928, disclose in this country the invention embraced in counts 3 to 8, inclusive, is not disputed herein.

Under the foregoing statement of facts, there are presented for our consideration three questions, as follows:

1. Are appellants entitled to a date of October, 1928, for conception and disclosure in this country of the invention embraced in counts 1 and 2, as well as counts 3 to 8, inclusive?

2. Are appellees entitled to a finding of conception and reduction to practice of the invention embraced in all the counts as of December, 1928?

3. Assuming that appellants are entitled to a finding that the invention was disclosed by them in this country in October, 1928, may the activities of appellants in England toward reducing the invention to practice be considered as due diligence having been exercised from December, 1928, to March 18, 1929, the date of the filing of said British provisional application?

With respect to the first question, both tribunals of the Patent Office found that said Col. Clare in his disclosure in this country in October, 1928, did not disclose the last elements of said counts 1 and 2 requiring the edges of the plastic to be forced inward. We have carefully examined the testimony with respect to said disclosure by Col. Clare and agree with said Patent Office tribunals that he did not disclose said elements of said counts, and therefore the earliest date of conception that can be awarded appellants as to said counts 1 and 2 is the date of their British provisional application, March 18, 1929. We are likewise clear that Col. Clare did, in October, 1928, disclose in this country the invention embraced in said counts 3 to 8, inclusive.

With respect to the second question above stated, appellants do not dispute that appellees are entitled to a date of December, 1928, for conception of the invention as embraced in all the counts, but counsel for appellants sharply challenge the findings of the Patent Office tribunals that appellees reduced the invention to practice in said month of December, 1928.

The evidence establishes that both of the appellees were, in December, 1928, employees of the Duplate Corporation, which corporation was engaged in the manufacture of laminated glass; that appellee Sherts was the head of the research department of the corporation; that appellee Hamill is a chemist, and on December 3, 1928, he began research work upon the question of finding a remedy for edge separation of assembled sheets of glass at the plant of the Duplate Corporation, where trouble of this kind had developed; that Sherts discussed the problem with Hamill and together they inspected the current process and product, and together they conceived the idea of first trying to force transparent liquid into the edges of these separated plates, and proposed both inert liquids and solvents, which latter would soften and swell the celluloid. Appellee Hamill testified that he and Sherts had a consultation on this subject on December 3, 1928, and further stated as follows: "* * * We finally came to the conclusion that in order to more thoroughly effect this closing or repairing of the separation, that heat and pressure would be necessary; of course the heat and pressure in conjunction with the solvent. We proposed using it by introducing safety glass in a bath of the various materials that we had discussed and then applying heat and pressure to that bath, thereby forcing the materials into the void and separation."

Other individuals of the corporation were then called in, and the method above quoted was disclosed to, and discussed with, them. The matter of development was placed in the hands of Hamill under the supervision of Sherts.

Without going into detail respecting this testimony, it is sufficient to say at this point that we think it is well established that during said month of December, 1928, many sheets of glass were produced by the process embraced in the counts, five of which sheets, 3x3 inches in size, were introduced in evidence. These samples so introduced show no edge separation.

It is also established that the process here involved was used commercially to some extent by the Duplate Corporation in the month of December, 1928. The testimony is uncontradicted that in said month said Duplate Corporation began producing commercially, using the process here involved, from 100 to 200 sheets of laminated glass per day.

Appellants' principal attack against appellees' claim of reduction to practice by them of the invention in December, 1928, rests upon a contention that the evidence does not establish that the glass produced by the process was sufficiently tested in that month to demonstrate the success of the process.

It appears that the laminated or safety glass made according to the process here involved is principally used in automobiles, particularly for windshields, and it is appellants' theory, as we understand it, that to reduce the invention to actual practice would require testing the glass under actual working conditions; that is, in place in an automobile. It is conceded that no such tests were made by appellees. Appellees contend that no such tests were necessary, and both tribunals of the Patent Office were of that opinion. It is to be observed that each of the counts relates to laminated glass generally, and in none of them is use of the glass referred to, nor is such use referred to anywhere in appellees' patent or in appellants' application. Appellees' counsel contends that laminated glass produced in accordance with the process involved is useful for other articles of manufacture, such as safety goggles, etc. Appellants further contend that, even though use of the

glass in automobiles was not necessary to demonstrate the success of the process, the glass produced by such process in December, 1928, was not, so far as the evidence discloses, under observation a sufficient length of time to entitle appellees to a finding of actual reduction to practice of the invention in that month.

We agree with the concurring views of the Patent Office tribunals that it was not essential to test the glass manufactured by said process by use of the same in automobiles, and that the many experiments shown in the evidence to have been conducted by appellees in testing their process demonstrated that the process was successful in curing in large measure the defects in laminated glass not treated by such process, and further that the process prevented, to a very large extent at least, the occurrence of such defects in laminated glass manufactured by the Duplate Corporation. We are of the opinion that the tests conducted by appellees in December, 1928, demonstrated such a degree of improvement in the quality of glass manufactured by the use of the process here involved as to amount to a reduction to practice of the invention. This view is supported by the established fact that the Duplate Corporation began to use the involved process commercially in the latter part of December of said year.

Appellants point to the fact that, although the testimony on behalf of appellees is to the effect that the process was used commercially by the Duplate Corporation, no such commercial products were offered in evidence by appellees, and appellants contend that, if such process had been put into commercial use, pieces other than the small 3x3-inch samples might have been produced. It is the contention of appellees, on the other hand, that products of the nature here involved are not easily traced in their subsequent history.

The Board of Appeals considered this point and stated that, while appellees' case would have been stronger had such evidence been produced, they were nevertheless of the opinion that appellees had sufficiently established reduction to practice of the invention by them in December, 1928, and, as hereinbefore stated, we are of the same opinion.

It follows from the foregoing that, as to counts 1 and 2, appellees were the first to conceive and the first to reduce to practice the invention embraced therein, and they are therefore entitled to an award of priority with respect to such counts, as held by the Patent Office tribunals.

With regard to counts 3 to 8, inclusive, appellants were the first to conceive the invention, but appellees were the first to reduce to practice. Therefore, in order to entitle appellants to an award of priority with respect to such counts, the evidence must establish that appellants were diligent in reducing the invention to practice from immediately prior to December 3, 1928, until March 18, 1929, when they constructively reduced it to practice by filing the British provisional application.

It is conceded that there was nothing done by appellants in the United States, or by any one in this country on their behalf, toward reducing the invention to practice between December 3, 1928, and March 18, 1929, the date of their British provisional application; but it is the contention of appellants that they were, during all of said time, diligent in England in reducing the invention to practice, and that such diligence is available to them here to cover the period from December 3, 1928, to March 18, 1929.

The Examiner of Interferences held that diligence by appellants in England toward actual reduction to practice could be considered only in the event that such diligence hastened appellants' actual reduction to practice in the United States, or the constructive reduction to practice to which they were entitled by virtue of the filing of their British application, and that, inasmuch as appellants never did have an actual reduction to practice in this country, the only diligence of appellants that could be considered was diligence toward filing said British provisional application, and that the evidence showed such diligence only after February 27, 1929. The Examiner of Interferences therefore held that appellants were lacking in diligence in reducing the invention to practice and awarded priority of invention as to said counts 3 to 8, inclusive, to appellees.

The Board of Appeals, however, held that neither diligence abroad in actually reducing an invention to practice, nor diligence in preparing the British application, could be availed of by appellants in this proceeding. We quote from the decision of the board as follows:

"We find no decision serving as a direct precedent for the present situation. The only benefit allowed for applications in foreign countries we' believe is that under Statute 4887 and the international convention under which benefit is allowed for the definite filing of a foreign application under certain conditions. We believe there is no reason or warrant for extending the rule beyond that definitely allowed in the Statute for such filing date. We are therefore unable to agree with the Examiner's conclusions in allowing benefit for the work of preparing an application as being activity that should be credited as diligence.

"Concerning the research and experimental work in connection with actual reduction to practice in England by Wilson and Dick, we think the Examiner's conclusions are clearly correct. Under the statutes no credit could be allowed for even actual reduction to practice and public use in a foreign country. It seems to clearly follow therefore that activity wholly in a foreign country and directed to the production of an invention, also wholly in a foreign country, would be of still less weight and not entitled to any credit. We find no citation in the record to the contrary. The decision is affirmed as to this respect.

"Since Wilson and Dick cannot be accorded diligence over the critical period from December 1928 until March 18, 1929, we must accordingly hold that they cannot prevail."

Counsel for the respective parties agree that there is no direct precedent upon the question of whether diligence abroad by a foreign inventor in reducing his invention to practice (there having been no showing of diligence by him in the United States) may be considered to enable an award of priority to such foreign inventor who, while being the first to conceive the invention, was the last to reduce it to practice.

It is well established that an actual reduction to practice abroad may not be considered in an interference proceeding involving a question of priority of invention. De Kando v. Armstrong, 37 App.D.C. 314; Westinghouse Mach. Co. et al. v. General Electric Co. et al. (Circuit Court of Appeals, Second Circuit) 207 F. 75; Lorimer v. Erickson, 44 App.D.C. 503. In the case of De Kando v. Armstrong, supra, the court said: "Any knowledge or use of the invention by appellant abroad, in the absence of a patent or description in a printed publication prior to appellee's date of invention or discovery, cannot deprive appellee of his right to a patent. Rev.Stat. § 4923, U.S.Comp.Stat.1901, p. 3396 [35 U.S. C.A. § 72]. *All that appellant did abroad was a nullity in so far as it affected the right of appellee.* If, therefore, appellee's right is to be destroyed, it must be because of the knowledge imparted to Waterman, which, however complete, amounts to nothing more 'than proof of conception and disclosure, *since all consideration of what appellant did in Europe must be eliminated.* The device embodied in appellant's invention had not been constructed in this country at the time appellee filed his application and constructively reduced his invention to practice." (Italics ours.)

The case of Westinghouse Mach. Co. et al. v. General Electric Co. et al., supra, involved the same question as was involved in the case of De Kando v. Armstrong, supra, the Westinghouse and General Electric Companies being the assignees of De Kando and Armstrong, respectively. The Westinghouse Case was an action in equity begun in the United States District Court, N. D., of New York, under R.S. 4915 (35 U.S.C.A. § 63). The Circuit Court of Appeals in that case expressly approved the holding of the Court of Appeals of the District of Columbia in the De Kando Case, that reduction to practice of an invention abroad could not be considered in a contest between rival inventors in the United States.

In the case of Lorimer v. Erickson, supra, the court said: "We agree with the tribunals of the Patent Office that Lorimer was the first to conceive, and also that his reduction to practice in France cannot be taken advantage of in this country as the actual reduction to practice. De Kando v. Armstrong, 37 App.D.C. 314–321."

The case of Bell v. Brooks, 19 O.G. 290, C.D. 1881, 4, was an interference proceeding in the Patent Office and was decided in 1881, before the enactment of the provision giving to an applicant for a patent in the United States the benefit, as a constructive reduction to practice of an invention, of the date of the filing of a foreign application under certain circumstances. It was there held that testimony in reference to experiments and reduction to practice in foreign countries, whether the invention be that of an American citizen or foreigner, is incompetent and inadmissible, the Revised Statutes proscribing all other evidence of in-

vention abroad than that derived from patents or printed publications.

Appellants' counsel cite the case of Minorsky v. Thilo, 63 F.(2d) 452, 454, 20 C.C. P.A. (Patents) 906, in support of their contention that the activities of appellants in England establish diligence in reducing the invention to practice. However, our decision in that case in no way bears out this contention. There the appellant was a German inventor; he was represented in this country by one Dubilier, a consulting radio engineer. By reason of the appellant having disclosed the invention in this country prior to appellee's conception, but having reduced the invention to practice subsequent to appellee's reduction to practice, the diligence of appellant was in issue. In our opinion we said: "It is conceded by the parties that responsibility for reasonable diligence in the particular circumstances heretofore stated, *rested upon Dubilier* and those who worked under or with him." (Italics supplied.)

We there decided that Dubilier had been diligent in this country in reducing the invention to practice, and that such diligence inured to the benefit of appellant. We gave no consideration to the activities of appellant in Germany as bearing upon the question of diligence.

Appellants' counsel cite the case of Rebuffat v. Crawford, 68 F.(2d) 980, 982, 21 C.C.P.A. (Patents) 901, and state in their brief, with respect to this case, as follows: "This court, in Rebuffat v. Crawford, 68 F. (2d) 980, 21 C.C.P.A. (Patents) 901, held that as a foreign inventor did not prove that he had introduced into the United States the invention in controversy prior to the filing date of the United States inventor he, the foreign inventor, could not avail himself of activities abroad; but this court's decision implies that the work of the inventor abroad might have been important if it had been proven that the invention was introduced into the United States prior to the filing date of the United States inventor. Thus, it is stated: 'The nature of his work abroad might be important in determining the identity of the invention or whether he had any concept of it or not, but it is incumbent upon him to prove, in this case, that the invention was introduced into the United States prior to the filing date of the senior party. See Gayler v. Wilder, 10 How. 477, 496 [13 L.Ed. 504].'"

However, immediately preceding the above quotation from said case, we find in the opinion the following: "Rebuffat cannot obtain any benefit in this interference for any work he did abroad, under the issue in this proceeding. De Kando v. Armstrong, 37 App.D.C. 314, 319."

From this is appears that this court has expressly approved the doctrine declared in the De Kando Case, supra, hereinbefore quoted in this opinion, and we find no basis in our opinion in said Rebuffat Case, supra, for such implication as appellants in their brief attempt to read into it.

Appellants also cite a decision of the Board of Appeals in an interference proceeding entitled Hall v. O'Connor, Interference No. 51,743, which decision appears in the record herein. From such decision it appears that Hall, a Canadian citizen, first conceived the invention there in issue in Canada and, as between the parties, was the first to disclose it in the United States, but was the last to reduce it to practice. A part of the activities of Hall toward reducing his invention to practice occurred in Canada and a part in the United States. The Board of Appeals held that Hall was entitled to the benefit of his activities in Canada, but also held that there was sufficient evidence of Hall's activities in the United States alone to establish diligence in reducing the invention to practice.

We have reviewed the authorities relied upon by appellants to support their contention that they are entitled to the benefit of their activities in England to establish diligence in reducing their invention to practice, and, as will be observed, the precise question here involved was not directly in issue in any of said cases. It is our duty to make a direct holding upon the question of whether activities abroad in reducing an invention to practice, without any activities of that character in the United States, may be availed of in any interference proceeding to establish diligence in reducing an invention to practice.

That actual reduction to practice abroad may not be availed of in an interference proceeding is conceded by appellants to be established, but their contention is that activities toward reducing the invention to practice may be availed of on the issue of diligence.

■■ The right of a party to have the benefit of the filing date of a foreign application for a patent as a constructive reduction to practice is purely statutory. Without the benefit of said section 4887,

R.S., appellants would not be entitled to consideration of their British provisional application at all. It seems to us that the right of the appellants to the benefit of their activities abroad must be found within the four corners of this statute, and the only right thus granted is the benefit of the filing date of the foreign application. It is our opinion that activities abroad, either in actual or constructive reduction to practice of an invention, unaccompanied by any activities in the United States, may not be considered in establishing diligence in reducing an invention to practice, and we so hold. To paraphrase what was said in the case of Rebuffat v. Crawford, supra, Wilson and Dick cannot obtain any benefit in this interference for any work they did abroad under the issue in this proceeding. The evidence clearly establishes that there were no activities by them in the United States toward reducing their invention to practice during the critical period. Had there been such activities in the United States, we express no opinion as to whether, under such circumstances, the activities of appellants abroad could be considered on the question of whether they had shown the necessary diligence.

Appellants make one further contention, viz., that inasmuch as it was only a few days more than four and one-half months after their disclosure in the United States that they completed their invention by constructive reduction to practice by the filing of the British provisional application, such a period of delay, without any showing of diligence, should alone be held not unreasonable. As we understand this contention of appellants, it is that, if the critical period be very short, no affirmative acts of diligence need be established; but such is not the law. The rule is so well settled as to require no citation of authority that one who is the first to conceive but the last to reduce to practice is chargeable with diligence from immediately prior to the time the later inventor entered the field, and such diligence must be established by evidence.

Counsel for appellants quote from our decision in the case of Jones v. Evans, 46 F.(2d) 197, 18 C.C.P.A. (Patents) 866, as follows: "We think it would be a manifest perversion of justice to say that the original inventor of this system of control should lose the benefit of his invention by the mere fact that a possible interval from April 16th to early in July elapsed, in which it does not affirmatively appear that any steps were being taken toward the filing of a proper application for patent."

This quotation is lifted from a paragraph which, when read as a whole, negatives completely the thought that a period from April 16 to early in July is so short that entire lack of diligence during such period should not be held to be unreasonable. The said quotation, with its context, reads as follows: "We are of opinion that the facts shown by the record are sufficient from which to conclude that *there was sufficient diligence shown on the part of appellant to justify a finding of priority of invention to him as to counts 1 and 2.* He had taken the matter up, after his preliminary tests, with the proper officers of his company, and had immediately requested the data and calculations as to the proper type of transformer to be used. These data were being collected from other branches of the company, and we think it would be a manifest perversion of justice to say that the original inventor of this system of control should lose the benefit of his invention by the mere fact that a possible interval from April 16th to early in July elapsed, in which it does not affirmatively appear that any steps were being taken toward the filing of a proper application for patent. *It may be that the machinery which appellant had set in motion in the General Electric Company was moving slowly, but not to such an extent, in our opinion, that the appellant should be caused to lose the fruits of his invention thereby.*" (Italics supplied.) We also said in that case: "Each case where diligence is involved, rests and must be decided upon its own facts, and all the surrounding circumstances must be viewed and considered in determining whether there was sufficient diligence."

In the case at bar there was no diligence on the part of appellants in the United States from immediately prior to December, 1928, until March 18, 1929, the date of their constructive reduction to practice of the invention by filing their provisional application in England, and therefore there is nothing in the record upon which diligence in this country in reducing the invention to practice can be based.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.

Affirmed.