# WOODS *v.* POOR (1).

PATENTS, INTERFERENCE; APPEALS; DILIGENCE.

1. There is no arbitrary rule or standard by which diligence may be measured, but each case must be considered and decided in the light of the circumstances of that case.

2. Where, on an appeal, the facts are admitted and a mere question of law is involved, this court will not hesitate to reverse the judgment appealed from, if convinced that an erroneous conclusion was reached. (Following *O'Connell* v. *Schmidt,* 27 App. D. C. 77.)

3. The law does not require that the one who first conceives a practical invention shall perfect it thereafter to such an extent that it is better than the invention of another who subsequently entered the field but only that the first to conceive shall be using reasonable diligence in endeavoring to protect and adapt his invention when such other enters the field.

4. The law encourages such delay in applying for a patent as is required to test the thoroughness and utility of the supposed invention, and to prevent the Patent Office from being overloaded with applications for patent for crude and incomplete devices. (Following *Griffin* v. *Swenson,* 15 App. D. C. 135.)

5. In an interference involving the invention of an improvement in roller side bearings for railway cars, where neither party actually reduced to practice, and the junior party concededly was the first to conceive, diligence on the part of the latter, entitling him to an award of priority, is sufficiently shown where it appears that during the four months between conception and the filing of his application he made blackboard drawings of the device, which, owing to its nature, answered the same purpose as the making of a model; almost daily discussed with another, also skilled in such matters, the details of the construction shown, with a view to obviating certain objections urged; and embarked in business for himself with very little capital to do so. (Following *Griffin* v. *Swenson, supra.*)

No. 419. Patent Appeals. Submitted March 15, 1907. Decided April 2, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          Reversed.

The facts are stated in the opinion.

Mr. A. H. Adams, Mr. C. E. Packard, Mr. J. L. Jackson, and Mr. George W. Rea for the appellant.

Mr. Thomas F. Sheridan and Mr. Charles F. Fitts for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal in an interference case from the decision of the Commissioner of Patents.

The counts of the issue disclose the structure of the invention, and read as follows:

"1. A side bearing for railway cars, comprising a casing or shell which has openings in its top and bottom, and a roller in said shell adapted for rolling contact through said openings with bearing surfaces; said casing or shell being provided with tracks located in position to support the roller when the latter is below and free from the upper bearing surface, and the said roller having free movement in the shell, both endwise of the latter and vertically with respect to said tracks.

"2. A side bearing for railway cars, comprising a casing or shell which has openings in its top and bottom, and a roller in said shell adapted for rolling contact through said openings, with bearing surfaces, and provided with trunnions at its ends; said casing or shell having inwardly extending flanges forming tracks which are located in position to engage the said trunnions when the roller is below and free from the upper bearing surface, and the said roller having free movement in the shell, both endwise of the latter and vertically with respect to the said track.

"3. In a device of the class described, the combination with a suitable roller, having oppositely extending gudgeons, of a box open at the top to receive the roller, and having a longitudinally

slotted bottom through which the roller projects, there being inwardly extending side flanges on the box to limit the downward movement of the roller, and a cover for the box, separately formed and adapted to furnish an upper tread for the roller."

All the tribunals of the Patent Office concur in awarding priority of invention to George H. Poor, the senior party, on the sole ground that Edwin S. Woods, the junior party, although first to conceive the invention, was lacking in diligence. The Commissioner, however, in his opinion, states that the question "is not entirely free from doubt."

Counsel for appellee, with commendable fairness and conciseness, thus state the case: "Fortunately, there is no serious dispute as to most of the facts in the case, since the dates of invention of both parties are practically admitted. It is not disputed that Woods was the first to conceive the invention which forms the subject-matter of the interference, and this conception was on September 16, 1903, on which day Woods made the disclosure of his invention to others. It is not disputed that Woods reduced his invention to practice constructively by the filing of his application on January 27, 1904.

"It is conclusively established by the record that Poor conceived the invention within a day or two of November 1, 1903, and this date is not seriously contested. Poor reduced his invention to practice on December 17, 1903, by the filing of his application.

"The facts are, therefore, that Woods, though the first to conceive, was the last to reduce to practice; and that Poor conceived and reduced to practice in the interval between Woods's conception and reduction to practice.

"Under these circumstances the burden of proof is placed upon Woods, of showing either that at the time of Poor's conception he, Woods, was actively engaged in reduction to practice of his own conception, and that this activity continued until his own reduction to practice, or of showing some sufficient excuse for his delay in reducing to practice."

It is apparent, therefore, that the only question here involved is whether Woods was using reasonable diligence in adapting

and perfecting his invention just prior to November, 1903, the date his competitor entered the field, and continued such diligence to the time of filing his application January 27, 1904. It is perhaps not inappropriate at the outset to state what has many times been stated, that there is no arbitrary rule or standard by which diligence may be measured. The sole object of the law being to mete out the fullest measure of justice, each case must be considered and decided in the light of the circumstances of that case. The nature of the invention, the situation of the inventor, the length of time intervening between conception and reduction to practice, the character and reasonableness of the inventor's testimony and that of his witnesses,—are all important factors in determining the question of diligence. And where the facts are admitted, and a mere question of law is involved, the court will not hesitate to reverse the judgment appealed from, if convinced that an erroneous conclusion was reached. *O'Connell* v. *Schmidt,* 27 App. D. C. 77.

The record in this case discloses that the appellant, Woods, is by profession a mechanical engineer and something over thirty years of age; that he was vice president and manager of the Kindl Car Truck Company of Chicago, Illinois, from February, 1898, to October 24, 1903, at which time, owing to differences arising between the president of that company, Samuel W. McMunn, and himself as to the division of profits arising from sales of roller bearings embodied in Patent No. 703,148, which was issued to said Woods and McMunn, he severed his connection with the company. During Woods's encumbency as vice president the company had been manufacturing roller bearings under said patent. Woods, soon after leaving the company, embarked in the railway supply business on his own account, in which business he continued during the remainder of the period covered by this controversy. On September 15, 1903, while at St. Louis, he conceived this invention, and made a drawing of the same, with a written explanation on the reverse side thereof. This drawing, even without the explanation, fully and completely discloses the device. He returned to Chicago that night, taking the drawing with him, and the next day

showed it to J. M. McConahey, an attorney, and to John Jacob, who was the draughtsman and superintendent of mechanical work for the Kindl Company, and skilled in the art. Each of these gentlemen signed their names as witnesses on the reverse side of the sketch. Immediately following this, Woods discussed his discovery with Jacob, who was in his room daily. Large sketches were made upon a blackboard in Woods's office, and details of the idea were discussed. Jacob appears to have made certain objections and criticisms to the device as outlined, the result being, as Woods says, "that he endeavored to think of some means to overcome this criticism." The drawings remained upon the blackboard for several weeks, and frequent discussions continued to be had with Jacob concerning them. Woods had very limited capital in which to embark in business for himself, and appears to have been very busy with many matters immediately after leaving the Kindl Company. On October 24, 1903, Jacob severed his connection with the Kindl Company, and engaged with Woods. Discussions as to the possibility of perfecting the device were again had. Woods, in his testimony, speaking of these discussions, said: "I had almost constantly in mind the question of overcoming the objections referred to before, made by Mr. Jacob. I myself and alone, as well as together with Mr. Jacob, frequently went over these matters in the endeavor to overcome Mr. Jacob's objections, but I was unable to do so." On cross-examination he was asked:

Q. Then, between September 15, 1903, and January 27, 1904, all the physical work done by you toward developing this invention was limited to the blackboard sketches which you have referred to in your direct examination; is not that true?

A. No, sir; Mr. Jacob and I, as well as myself alone, held numerous conversations which undoubtedly involved our making a number of sketches all looking to the overcoming of the objections of Mr. Jacob before referred to by me, and which objections I believed to be well founded.

Woods is fully corroborated by Jacob. In answer to a question as to what was done by Woods after he had exhibited the

sketch of September 15th, Jacob said: "We laid out details of this sketch on a blackboard with chalk. This blackboard was in Mr. Woods's office, and we looked his drawings on the blackboard over, with a view of more clearly finding the objections and remedies that could be made to overcome the weak construction to. which I have referred." He also testified that the drawings remained on the blackboard for two or three weeks, and that whenever he was in Woods's office they "discussed some points in reference to the drawings on the board;" and that the matter was discussed several times after he entered Woods's employ. In answer to the question whether Woods ever succeeded in devising any means for overcoming the objections urged, witness said: "Mr. Woods advocated ribs and lugs to strengthen the sides, and we also discussed the possibilities of using different kinds of metal; that is, we looked into the merits of making the device either in steel or malleable iron, or cast iron, and tried to arrive at a definite conclusion which of these different materials would make the best device, either from a mechanical or commercial standpoint."

The record discloses that Poor entered the employ of the Kindl Company October 24, 1903, and that, as heretofore stated, he conceived the invention in issue about November 1, 1903.

On this record we think Woods entitled to a judgment of priority. There is no doubt whatever that his date of conception antedates Poor's by a month and a half. There is no doubt that when he conceived the invention he fully realized and appreciated the value of his discovery, as he was highly skilled in the art, and, moreover, took immediate steps to fully explain his discovery to others to obtain indubitable evidence of having done so. Only twenty-three days intervened between the date of his return from St. Louis, where he conceived this invention, and the date of his leaving the Kindl Company. During that time he and Jacob had almost daily discussions as to the possibility of overcoming the criticisms which Jacob had made. Stress is laid on the fact that no models were made. We attach no importance to this fact, because, owing to the nature of the device,

the blackboard drawings answered the same purpose. They enabled these two men, highly skilled in the art as they were, to consider and criticize and endeavor to perfect the device. That they did not succeed in further perfecting it should not redound to Woods's disadvantage, for the reason that the law does not require that the one who first conceives a practical invention shall perfect it thereafter to such an extent that it is better than the invention of others who subsequently enter the field. All the law requires is that the first to conceive shall be using reasonable diligence in endeavoring to perfect and adapt his invention when his rivals enter the field. "We have heretofore had occasion to remark that the law encourages such delay as is required to test the thoroughness and utility of supposed inventions, and to prevent the Patent Office from being overloaded with applications for patents for crude and incomplete devices." *Griffin.* v. *Swenson,* 15 App. D. C. 135, 142.

Soon after Woods severed his connection with the Kindl Company he secured the services of Jacob, and they both testified that Woods's invention again became the subject of discussion. Of course, we do not mean to say that mere casual discussion would alone be sufficient to show diligence, but we think the evidence in this case shows much more. It must be remembered, also, that only three weeks elapsed between the time Woods left the Kindl Company and the time Poor entered the field, and that Woods, just having embarked in business on his own account, was busy adjusting himself to new conditions. Nevertheless, this invention appears to have received consideration, for he secured the services of the man who had pointed out its defects, and immediately resumed the discussion of those defects and the possibility of overcoming them. The delay in this case was less than the delay in *O'Connell* v. *Schmidt, supra,* and the facts in the two cases are quite similar. What was said in that case, therefore, applies to this.

Taking into consideration the nature of the invention, the circumstances surrounding him at the time, the comparatively short time between his date of conception and the date Poor entered the field, his promptness in filing his application there-

after, and the fact that reduction to practice was constructive and not actual in each case,—we conclude that Woods has shown that degree of diligence which the law requires, and that he is justly entitled to the fruits of his discovery.

The decision of the Commissioners of Patents will therefore be reversed, with directions to the clerk of this court to certify this opinion to the Commissioner of Patents, according to law.

*Reversed.*