## GRUNDY v. VAN LEIR.*
### Patent Appeal No. 3419.

Court of Customs and Patent Appeals.

March 4, 1935.

Howson & Howson, of Philadelphia, Pa. (Charles H. Howson and Kennard N. Ware, both of Philadelphia, and Wm. A. Smith, Jr., of Washington, D. C., of counsel), for apppellant.

Rector, Hibben, Davis & Macauley, of Chicago, Ill. (Glen E. Smith, of Chicago, Ill., and Charles M. Thomas, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an interference proceeding between two applications for patent relating to flexible shaft couplings, six counts being involved. Grundy is the senior party; his application having been filed in the United States Patent Office March 8, 1928. The application of Van Leir was filed October 18, 1928.

Priority was awarded to Van Leir by the Examiner of Interferences, and his decision was affirmed by the Board of Appeals; one member dissenting. From the latter decision appeal was taken to this court.

The elements comprising the combination claimed are described in the counts with varying degrees of particularity; but, since it is conceded that the devices of both parties read upon all the counts, it is deemed sufficient here to quote as illustrative only count No. 1:

"1. The combination in a coupling for connecting substantially aligned shafts, of a pair of coupling members each adapted to be secured to one of said shafts, each of said coupling members having projecting lugs intermeshing with the lugs on the other coupling member, the adjacent lugs on opposite coupling members being provided with flat surfaces lying parallel to a plane midway between them containing the axis of one of said shafts, and a resilient power transmitting member mounted between said coupling members and having radiating arms of resilient material contacting with adjacent flat faces of two of said lugs carried by opposite coupling members."

While there is complexity in each of the counts, the device itself is comparatively simple, as is disclosed by photographic and model exhibits on file. The principal feature involved in the combination claimed is the particular form of "resilient power transmitting member," mentioned in count 1, supra, which member, in some of the counts, is referred to as a "spider," and, in the briefs, is spoken of as a "cross."

In other words, the counts require a device wherein coupling parts of flexible shafts are fitted for holding a particular form of "spider," described generally in count 1, supra.

The preliminary statement of the party Grundy claimed August 25, 1927, for conception and September 29, 1927, for reduction to practice; that of the party Van Leir claimed May, 1926, for conception with reduction to practice on October 4, 1927.

*Appellee's petition for rehearing denied April 8, 1935.

The Examiner of Interferences awarded Grundy the date of September 29, 1927, for conception. No specific date for conception was awarded Van Leir, but it was held that certain testimony in connection with certain exhibits was found to establish for him "a corroborated date of conception prior to any date which the senior party [Grundy] might be entitled to assert." In the brief on behalf of Grundy, before us, it is conceded that there "is no issue as to the fact that Van Leir was the first to conceive and disclose."

Upon the question of reduction to practice, the Examiner of Interferences, after review of the testimony, said: "It can only be stated that the inventions of both the junior and senior parties comprehended by the counts appear to have been reduced to practice substantially at the same time."

However, the Examiner of Interferences in anticipation of the possibility of it being held upon appeal that Grundy was entitled to an earlier date than Van Leir for reduction to practice made the further finding that Van Leir had shown the legally required diligence, and so awarded him priority; he being the first to conceive.

Upon appeal, the Board of Appeals reviewed the testimony and concurred with the Examiner of Interferences as to conception by the respective parties. It held, however, upon the evidence cited, that Grundy was entitled to a date for reduction to practice anterior to the date awarded Van Leir, which latter date was found to be "at least as early as November 22, 1927."

As we understand the majority and dissenting opinions of the Board of Appeals, the members of that tribunal were in agreement upon the fact that Van Leir was the first to conceive and Grundy the first to reduce to practice, but the dissenting member failed to agree with the majority that Van Leir, as the junior party, sustained the burden of proof with respect to diligence.

It is not altogether clear just what date the majority held Grundy actually to have reduced to practice, but it was held that a test of his device, made at the American Engineering Company of Philadelphia, Pa., which test was found to have begun October 28 or 29, 1927, resulted in such reduction, while a test of Van Leir's device, which also resulted in its reduction to practice, was initiated "at least as early as November 8, 1927," at the plant of the Nash Engineering Company of Norwalk, Conn.

The record in the case is an extensive one, many exhibits both of a mechanical and documentary character having been filed, and counsel for the respective parties have furnished elaborate briefs devoted, in the main, to reviewing the testimony.

On behalf of the party Grundy it is quite earnestly insisted that the record establishes conception as early as September 21, 1927, when a working drawing, which is in the record as Grundy's Exhibit L, was completed, and reduction to practice on September 29, 1927, when a certain test was made by a professor of "materials of construction" in the civil engineering department of the University of Pennsylvania.

Full examination of the testimony upon which these contentions are based fails to convince us that the tribunals of the Patent Office, all of whom agreed in denying Grundy these dates, were in error, and as has been stated, no issue is presented as to Van Leir having been the first to conceive. Also, we agree that the testimony sustains the finding of all the members of the Board of Appeals that while Grundy is not entitled to September 29, 1927, for reduction to practice, he nevertheless did reduce to practice at least a few days earlier than Van Leir.

As we view it, the serious question in the case is whether Van Leir has met the requirements of law as to a showing of diligence.

As has been stated, this is the only point upon which the members of the Board of Appeals differ.

While there is no question of diligence on the part of Grundy requiring consideration here, it may aid in clarifying the issue to recount that the device of Grundy, the test of which, beginning October 28, 1927, resulted in his reduction to practice, was made following the completion of a pattern therefor on October 21, 1927, and was taken to the American Engineering Company by him and there personally installed on October 28 or 29, 1927.

The dates of beginning and completing the device of Van Leir, the test of which by the Nash Engineering Company resulted in his reduction to practice, are not shown; but it is shown that the device was shipped to the said company on October 4, 1927, and that it was received there on October 8, 1927.

The majority opinion of the Board of Appeals points out that the interval during which diligence on the part of Van Leir was

required was of "very short duration," that is from September 29, 1927, until November 22, 1927, a period of one month and twenty-one days, and says: "This period was entirely too short to create any presumption of negligence on the part of Van Leir. Furthermore, it was fully accounted for either by activity or a sufficient excuse for inactivity."

It was the view of the dissenting member of the Board of Appeals that the evidence shows Van Leir "was not diligent for a time." He says: "The decision is silent as to whether he [Van Leir] was diligent from the time of conception or that he had become diligent at a time which was clearly ahead of the senior party's date of conception but I think the evidence shows that he was not diligent for a time. Under these circumstances the junior party must prove, I believe, that he had become diligent by the time the senior party entered the field. This he has not done. The evidence merely indicates that he became active at about the time the other party did. The only dates that are reasonably certain at this time are September 29, 1927, for the senior party and October 4, 1927, for the junior party."

The dissenting opinion which has been strongly emphasized before us by counsel for Grundy is not clear as to the period during which its author thought that the evidence failed in showing Van Leir to have been diligent.

■■ The rule is that diligence on the part of the earliest conceiver but last reducer to practice is not required to be shown from the date of his own conception, but only from a time just prior to the entrance into the field of the later conceiver but earlier reducer to practice. Joseph A. Mortocello v. Louis Kobash, 39 F.(2d) 677, 17 C. C. P. A. (Patents) 1095, with its citations.

No contention to the contrary is made in the case at bar.

While, as has been stated, the date upon which Van Leir's device, shipped to the Nash Engineering Company, was begun and completed is not shown, it is shown that it was shipped on October 4, 1927, six days after September 29, 1927, the date awarded Grundy for conception. The majority of the board made a comparison with the period taken by Grundy for the manufacture and installation of his device—October 21 to October 29, 1929—and concluded, apparently in view of the fact that "the construction of the device must have occupied several days prior to October 4, 1927," that activity by Van Leir might properly be held to have begun within the time legally required.

It thus appears that one of the vital points involved—that of the beginning of activity on the part of Van Leir—was determined by comparison and deduction, and not upon the basis of any direct testimony as to a time when he actually began work upon the device.

As of course, it is not necessarily fatal to Van Leir's case that he was unable to have a date definitely named, and reasonable inferences drawn from proven circumstances are often essential in determining facts; but, in view of the grave importance of this phase of the case, it is essential to weigh the testimony and consider the surrounding circumstances most carefully.

The record shows that beginning in July, 1927, Van Leir entered the employ of one Benjamin E. Linfoot, who was engaged in a business which included the manufacture and sale of flexible couplings, the place of business being in Philadelphia, Pa.; that some time near the end of September, 1927, Van Leir, in his capacity as a salesman, called upon the Nash Engineering Company of South Norwalk, Conn., and there had an interview with Mr. Howard E. Adams of that company in an effort to interest him in a flexible coupling, known commercially as "Hercules," to which Van Leir held a patent; that Mr. Adams made criticism of the "Hercules" device and suggested another form of coupling; that Van Lear stated to Mr. Adams that he would make and submit such a coupling; and that he proceeded with this upon his return to Philadelphia.

The device so submitted was that which was shipped on October 4, 1927.

It seems to us that if Van Leir is to prevail, the record should establish with reasonable certainty that the interview with Adams took place upon a date in September, 1927, sufficiently prior to Grundy's conception date of September 29th to have enabled Van Leir to return to Philadelphia and begin work upon the new form of coupling prior to that date, and we are unable to agree with the majority of the board that the record is sufficient to establish this. The importance of establishing this date is immediately apparent when it is recalled that Van Lear's essential activity did not begin until just after the time of his call upon Adams.

Van Leir's own testimony upon this vital point is lacking in definiteness. On direct examination he said the call was "about September 28th or 29th; very late September of 1927." Upon cross-examination the following testimony was given:

"XQ 40. * * * Do you recall the date of your visit to the Nash Engineering Company? A. Approximately only; September the 25th or 24th."

Then, in answer to a question by his own counsel as to what year, he replied "1928; or 1927," and counsel for Grundy seems thereupon to have volunteered, "1927."

We have no doubt that the year 1927 was the year in point, and our difficulty is rather with the establishment of the day of the month of the interview.

In the testimony of Mr. Adams, respecting the date of Van Leir's visit, there is no statement more definite than that "it was near the first of October." There is in the record a stipulation of counsel that a Mr. Bradbury, purchasing agent of the Nash Engineering Company, would testify that, as such agent, "he had an interview about October 1, 1927 with Henry W. Van Leir, of Philadelphia, Pennsylvania," and that following it he received the device shipped to the company, and a certain letter dated October 4, 1927. A copy of said letter is in the record as Van Leir's Exhibit 3. It throws no light upon the actual date of Van Leir's visit to the company.

Aside from the foregoing, all that we find in the record attempting definitely to fix the date of the visit is an entry from an account book kept by Mr. Linfoot which reads: "H. W. Van Leir to coupling account. Travelling expenses to Nash Engineering. * * * $12.50."

This entry is not itself dated, but it appears between two pay rolls, one of September 23d and the other of September 30th. We think this is not sufficiently definite to be of benefit in determining the point so material here.

We appreciate the fact that this case is somewhat unusual in that the parties were engaging in pertinent activities at so nearly the same time or times, but the near coincidence does not alter the rule of law, nor render less the burden which rests upon the party Van Leir to prove diligence, and we do not feel that the evidence is sufficient to meet that burden in the respect indicated.

We may add that the proof as to Van Leir's actual reduction to practice—that is,

the time when the testing at the plant of the Nash Engineering Company really took place—is likewise lacking in definiteness, and upon this the conclusion of the majority awarding a date "at least as early as November 22, 1927," seems also to have been arrived at by deduction and inference rather than upon positive testimony as to definite dates.

It is not necessary, however, to enter upon any thorough analysis of the evidence upon this phase of the case.

For the reasons indicated, we think the decision of the majority of the Board of Appeals was erroneous, and the same is reversed.

Reversed.

GRAHAM, Presiding Judge, concurs in the conclusion.