## HULL v. DAVENPORT.

### Patent Appeal No. 3800.

Court of Customs and Patent Appeals.
May 29, 1937.

Robert R. Candor, of Dayton, Ohio, for appellant.

Raymond G. Mullee, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal by the party Hull from a decision of the Board of Appeals of the United States Patent Office, in which priority of invention relating to refrigerating apparatus was awarded to the party Davenport. The Board reversed the decision of the Examiner of Interferences which had awarded priority in the invention of the count to the junior party Hull.

Hull was the first to conceive and the last to reduce to practice. He was awarded

a date of conception of June 3, 1930, and he filed his application January 31, 1931. The party Davenport filed his application December 30, 1930, and this date is his only date for conception and reduction to practice. Neither party actually reduced the invention to practice, and both rely upon a constructive reduction to practice which consists of the filing of their respective applications.

The question of diligence of the party Hull was the only question considered by the Board and is the only question presented here.

Hull took testimony. Davenport took none. Such portions of the testimony as the parties regarded as of importance appear in the record by way of stipulation. Hull was employed in the Frigidaire department of the General Motors Corporation, and the stipulated testimony shows that the patent department of this firm prepared and delivered to a certain law firm a great number of invention files and that each file included all necessary papers and sketches relating to a separate invention; that with respect to these files the records showed that during the year 1930 the lowest number of cases of this company in the hands of said attorneys was 311 at the first part of the year and that at the end of the year there were 406 inventions then awaiting action. The instant application contained two pages of drawings and eleven pages of printed specification which included six claims. On June 3, 1930, or within a week thereafter, Hull, through a patent contact man, delivered to the said firm of attorneys the papers, sketches, etc., which were necessary for the preparation of the application for a patent on the invention here in controversy. There is nothing else shown in the record which throws any light as to what, if anything, was done with respect to the invention during the entire period of about eight months.

On the question of Hull's diligence, the Examiner of Interferences stated: "The party Hull then has the burden of showing reasonable diligence from just before December 30, 1930, to January 31, 1931, when he filed his application. Since this involves a period of *only five weeks,* a period not in excess of a reasonable time in which to prepare an application taking into account press of immediate business and activity attendant upon the preparation itself, lack of reasonable diligence will not be imputed to Hull." (Italics ours.)

Upon appeal, the Board of Appeals, with reference to the subject of diligence, said in part:

"It is unnecessary to enter into a discussion of the subject matter involved as the only question requiring consideration is that of diligence. The party Hull has been awarded June 3, 1930, as a date of conception, at about the time his invention was placed in the hands of his attorney for preparing and filing an application. That application was filed January 31, 1931. The party Davenport filed December 30, 1930. The party Hull's explanation for the delay in filing over a period of *about eight months* is in effect that the attorneys were preparing many applications. [Italics ours.]

"It is our judgment that substantially eight months is entirely too long a period to be accepted as a reasonable time within which to file an application in the absence of a showing of special circumstances."

It will be noticed that the Examiner of Interferences took the position that "only five weeks" is the period of time in which appellant is required to show diligence, while the Board took the position that Hull's attorneys had delayed filing his application for a period of about eight months after the invention had been conceived and had offered no explanation of the cause of the delay.

Many cases have been cited and discussed. None of them is precisely in point. The facts with respect to diligence in each case differ from those of every other case, and necessarily the question must always be decided in the light of the particular facts in the individual case.

In Patent Office practice the rule with respect to diligence is an old one and one which we think is well settled and generally understood by those familiar with patent law. In the Patent Act of 1836, 5 Stat. 117, provision was made for certain defenses to be set up in actions for patent infringement. Among the defenses which might be pleaded was "that he [the patentee] had surreptitiously or unjustly obtained the patent for that which was in fact invented or discovered by another, who *was using reasonable diligence* in adapting and perfecting the same. [Italics ours]" Section 15. This was, in substantially the same language, re-enacted into the Patent Act of 1870, 16 Stat. 198, § 61, which became section 4920 of the Revised Statutes (35 U.S.

C.A. § 69). Soon after the passage of the act of 1836, the courts were called upon in infringement suits to determine who were the first inventors of the inventions there involved. We find in the decisions from that time to this day much discussion of the question, and, while courts have used different language in stating the rule, there has been but little change in the rule as originally announced.

 Clearly it was the intent of Congress to assure the first inventor who had completed the mental act of invention that he should not be deprived of his reward by reason of delays which he could not reasonably avoid in giving his invention to the public. But we must bear in mind that it was not alone to reward the inventor that the patent monopoly was granted. The public was to get its reward and have the advantage of the inventor's discovery as early as was reasonably possible. See Robinson on Patents, § 385. It will be noticed that the act of 1836, which is the genesis of the rule of diligence as applied in Patent Office practice, said: "who was using reasonable diligence in adapting and perfecting the same." As applied by the Patent Office and the courts in most instances, the rule has finally crystallized to be that the first conceiver who is last to reduce to practice must couple his conception to his reduction to practice with reasonable diligence. In some cases it is stated that he must so act as to make his conception of the invention and the perfecting it a single inventive act. The weight of authority, however, regards his diligence sufficiently shown if it be found that he was diligent from a time just prior to the second conceiver's entrance into the field to the first conceiver's reduction to practice either actually or constructively. Christie v. Seybold (C.C.A.) 55 F. 69; Woods v. Poor, 29 App.D.C. 397; Grundy v. Van Leir, 75 F.(2d) 503, 22 C.C.P.A. (Patents) 1034; Wilson et al. v. Shorts et al., 81 F.(2d) 755, 23 C.C.P.A.(Patents) 914.

 His lack of diligence from the time of conception to the time immediately preceding the conception date of the second conceiver is not regarded as of importance except as it may have a bearing upon his subsequent acts, for the reason that he has not forfeited his right to a patent by his delay when no adverse interests are involved, and it follows that his adversary should only be concerned with what happened immediately prior to and after his entry into the field.

Evidence of diligence during the critical period may be shown either by affirmative acts or acceptable excuses or reasons for failure of action. See Christensen v. Ellis, 17 App.D.C. 498.

 It is also well settled that the first conceiver cannot account for his failure to reduce his invention to practice for an unreasonable time after his conception by showing that he merely turned the matter over to his attorney if in fact the attorney in preparing the application and getting it into the Patent Office showed inexcusable lack of diligence. Briggs v. Lillie et al., 1905 C. D. 168. Of course, in determining the diligence or the lack of diligence on the part of the attorney, considerations are involved unlike those in many respects which appertain to the inventor. Courts have been liberal in their holdings with respect to the length of time a busy patent attorney may take in the preparation and filing of patent applications. Farmer et al. v. Schweyer, 68 F.(2d) 961, 21 C.C.P.A.(Patents) 865. In one case, Courson v. O'Connor et al. (C.C. A.) 227 F. 890, it was held that lack of diligence will not be imputed to the attorney unless the same amounts to negligence, but the weight of authority hardly goes this far. It requires that he must show reasonable diligence [see Briggs v. Lillie et al., supra, and Martus et al. v. Heise, 39 F.(2d) 715, 17 C.C.P.A.(Patents) 1083], and that his lack of diligence must be charged against his client.

Now, measuring the facts at hand by the principles above announced, we, after most careful consideration, have arrived at the conclusion that the appellant here has not shown such reasonable diligence as the law requires and that the decision of the Board in denying the appellant priority of invention in the count at issue on account of his lack of diligence was not erroneous.

 The Examiner of Interferences apparently took the position (although this is not the position taken by appellant's counsel in oral argument in this court) that all appellant had to do was to account for five weeks of time and that he had done so by showing that during that period of time the application was in the hands of the attorneys who prepared and filed the same. It is true that the critical period in the instant case in one sense is less than five weeks' time, but the rule contemplates that there must be diligence at the time or just before the second conceiver enters the field and that from this time continuing diligence

must be shown or lack of it satisfactorily explained. The burden was upon the appellant to affirmatively show reasonable diligence. The only act of diligence shown by appellant or his attorneys during the entire seven-month period preceding the beginning of the alleged critical date was appellant's submission to his attorneys of his invention for the preparation of an application on June 3, 1930, or, as the record shows, within a week thereafter.

There is, therefore, no showing that appellant was diligently engaged in trying to perfect his invention at the time or just before the time when the appellee entered the field. We cannot presume under the facts in this case that appellant's attorneys were diligent at the time appellee entered the field nor are there any facts proven from which we may conclude that they were diligent at any particular time during the entire eight months period. Of course, they were using diligence when they were engaged in preparing the application, but when the preparation of it began has not been shown. It is not shown that the several hundred cases in the attorneys' hands were taken up in their regular order or that appellant's case was not put to one side and others preferred over it.

We are of the opinion, therefore, that it cannot be logically concluded that the appellant has shown such diligence as the law requires, and the decision of the Board of Appeals is affirmed.

Affirmed.