26 C.C.P.A.(Patents)

## BROWN v. BARTON.
### Patent Appeals No. 4070.

Court of Customs and Patent Appeals.
Feb. 6, 1939.

Rehearing Denied March 27, 1939.

Howson & Howson and Charles H. Howson, all of Philadelphia, Pa., and William A. Smith, Jr., of Washington, D. C. (F. A. Bothwell, of Philadelphia, Pa., of counsel), for appellant.

Harry G. Grover and James G. Norton, both of New York City (Abraham S. Greenberg, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of invention to appellee upon two counts there in issue. No appeal was taken with respect to count 2, and count 1 is the only one before us.

The interference is between appellant's application filed on September 24, 1932, and an application of appellee filed on November 3, 1932.

Count 1 reads as follows:

"1. A carrier wave detecting system comprising a source of modulated carrier waves, a diode rectifier network including a cathode, an anode and a resonant circuit connecting the cathode and anode, said circuit being tuned to a desired carrier frequency, a pair of load resistors connected in series with each other and connecting said cathode and anode, an audio output network including an electron discharge device, the space current circuit of said device including the load resistor nearest said diode cathode whereby the space current of said device traverses said last load resistor, a control electrode disposed in the space current path of said device and being connected to the diode anode side of the load resistor nearest the diode anode, and means electrically associated with the last named resistor for preventing the impression of the carrier component of rectified waves upon said control electrode."

The subject matter of the interference relates to a detector system for a radio receiver, the detector system having incorporated therein means to provide "noise suppression." In view of the questions before us for determination, the count sufficiently describes the invention involved.

Both parties filed preliminary statements. Appellee alleged conception and reduction to practice of the invention as defined in count 1 during the period between March 24, 1932, and April 27, 1932.

Inasmuch as appellant relies upon the filing date of his application for conception and constructive reduction to practice of the invention, it is unnecessary to set forth the dates alleged in his preliminary statement.

Only the appellee took testimony.

It appears that the Radio Corporation of America is the assignee of appellee's application, and that the Philadelphia Storage Battery Company is the assignee of appellant's application.

That the counts are supported in the disclosures of both applications is conceded.

There are three questions involved in this appeal, viz.: 1, whether appellee has established conception of the invention prior to appellant's filing date; 2, whether appellee has established reduction to practice of the invention prior to appellant's filing date; and 3, if appellee has established conception of the invention prior to appellant's filing date, but not its reduction to practice prior thereto, was appellee diligent in reducing his invention to practice from immediately prior to appellant's filing date until he filed his application, it being conceded that appellee had no actual reduction to practice between appellant's filing date and his own filing date.

It appears that appellee was an employee of his assignee. With respect to appellee's proof a very unusual situation is presented, in that appellee has not directly testified to his conception of the invention as set forth in said count. When the testimony was taken, appellee testified that a certain sketch prepared by him prior to April 26, 1932, and marked Exhibit 2, embodied his conception of the invention as set forth in count 1. Said Exhibit 2 was offered in evidence and apparently it was not until final hearing that it was discovered that said Exhibit 2 does not disclose the element of the count reading: "a pair of load resistors connected in series with each other and connecting said cathode and anode." Nowhere in his own testimony does appellee mention this element of the count, and it is not seriously contended here that it is disclosed in said Exhibit 2. At any rate the Examiner of Interferences and the Board of Appeals held that it was not disclosed in said Exhibit 2. Neither did any of the witnesses on behalf of appellee mention the element of the count above quoted, although one witness, Chambers, an employee of appellee's

assignee, testified that in the Spring of 1932 he assisted appellee in constructing a model of a radio receiver, and while upon the witness stand he drew a sketch illustrating the circuits on said model. Said sketch was introduced in evidence as Exhibit 14. The Examiner of Interferences held that this sketch supported all of the elements of count 1. In his decision he stated:

"The witness Chambers testifies that he remembers the circuit of the receiver which he saw constructed and draws the circuit diagram introduced as exhibit 14 as the circuit he remembers. This circuit admittedly supports count 1 but it appears that the testimony relating thereto is entitled to very little weight.

"This circuit diagram was drawn by Chambers nearly four years after discussing the receiver with Barton and the probability that Chambers recollection might be confused with some later circuit is so great that no evidential value can be attached to this exhibit. Particularly is this true where none of the diagrams made at the time disclose this circuit and none of the other witnesses testify to the same."

The Board of Appeals in its decision made no reference to the testimony of Chambers.

In April, 1932, appellee turned over to the patent department of his assignee certain sketches, including Exhibit 2, together with a letter to one H. D. Newton describing his invention. In this letter no mention is made of the element of count 1 hereinbefore quoted. It appears that one T. R. Goldsborough was at that time in charge of the patent department of appellee's assignee, and that he had four or five assistants under him. Said Goldsborough testified that he personally prepared a part of the application of appellee here involved and had before him for that purpose Exhibit 2. He stated that "The description of the circuit appears to fit the drawing on Exhibit 2, although I note, in the last paragraph on page 4, that a local oscillator is referred to as being indicated by a rectangle."

This witness, in his testimony, did not mention the element of the count here under consideration. He further testified that, it being impossible because of press of other duties to give this case the prompt attention that it warranted, it was turned over to Mr. Greenberg, a patent attorney under him, some time during the summer of 1932 for completion. Mr. Greenberg, who is also the counsel for appellee before us, testified that some time prior to August 22, 1932, he received from said Goldsborough the partially prepared application of appellee. His testimony upon this point is as follows:

"Some time prior to August 22, 1932, but at a date which I cannot definitely fix, I received from Mr. Goldsborough various disclosures and a partial rough draft relating to RCA Victor Docket 2200. The material which I received from Mr. Goldsborough included Barton's Exhibits 1, 2 and 3, among other disclosures, and also pages 1 to 12, inclusive of Barton Exhibit 6.

"The material I took over from Mr. Goldsborough also included the Bristol Board drawings containing the present Figures 1 to 4, inclusive, of the Barton application, the figures being in ink and bearing various legends thereon in pencil. These drawings were later filed in the Patent Office with the completed application, as Mr. Goldsborough had been preparing the application in that manner. I might say that I remember this very clearly because I do not personally work in that manner, but rather prepare my drawings for new cases in the form of rough sketches, which are submitted to the draftsman to be placed on the final Bristol Board after the case has been corrected by the inventor.

* * * * * * * * * * * * *

"* * * I can state at this time that Barton Exhibit 2 was used as the basis of Figure 1 of the Barton application, and I can also state that Figure 2 of the Barton application is substantially based on the circuit diagram shown in Barton Exhibit 1."

It thus appears that the element of the count here under consideration was disclosed in the partially prepared application by Mr. Goldsborough, although there is no testimony whatever as to when Goldsborough received the information which led him to include in the drawing Figure 1, made by him or under his direction, the element of the count here being considered. Inasmuch as the Patent Office drawings include said element of the count, and Greenberg's testimony is in effect that the drawing Figure 1, received by him from Goldsborough, was sent to the Patent Office as it was received by him, the complete invention embodied in

count 1 must have been in the possession of Goldsborough at the time he partially prepared the application. Appellant's counsel challenges this, contending that the drawing Figure 1, as delivered to Greenberg, may not have disclosed the element of count 1 here in dispute, but that such element may have been added afterwards. Much stress is laid upon the testimony of Greenberg that he could state that appellee's Exhibit 2 was the basis of Figure 1 of appellee's application. The argument is made that, if Greenberg had nothing to do with the making of the drawing Figure 1 of the application, he could not state that it was based on appellee's Exhibit 2, and that, inasmuch as Exhibit 2 does not support the count, the inference should be that the element of the count in dispute was not in the drawing at the time it was received by him from Goldsborough.

We are not impressed with this contention. The witness Greenberg is a reputable attorney, and there is nothing in the record to indicate any lack of credibility upon his part. We take it that his statement that the drawing, Figure 1 of appellee's application, was based upon appellee's Exhibit 2, was rather the expression of his opinion as a patent attorney than a statement of fact. It should be remembered, too, that generally speaking the drawing Figure 1 does conform to Exhibit 2 except as to the one element here being considered, which element does not seem to have been considered in issue during the taking of the testimony.

We therefore agree with the Board of Appeals that Goldsborough, before he turned the case over to Greenberg, was in possession of the entire invention, including the element of the count here in question. The Board of Appeals upon this point stated:

"It is admitted that the sketch which was submitted by the party Barton to his attorney does not satisfy the counts. We are satisfied, for reasons stated by the examiner, that the drawings which were sent from attorney Goldsborough to attorney Greenberg were filed in the Patent Office. These drawings admittedly disclose the matter in issue.

"There is no definite proof as to why the disclosure of the inventor's sketch was changed to the disclosure of the drawings but we are of the view that when patent drawings are prepared by an attorney for a client, they are to be accepted as prima facie evidence of conception by the inventor as of the date that the drawings were made. We do not consider that the record of this case affords sufficient reason for holding otherwise. We therefore are of the opinion that the party Barton is entitled to a date earlier than the filing date of the senior party."

We are in accord with the view expressed that, when an attorney prepares drawings for a client in a patent application, the presumption is that he derived his information with respect thereto from the inventor.

We therefore hold that appellee is entitled to the date of August 22, 1932, for conception of the invention.

We agree with the Examiner of Interferences, for the reasons stated by him and hereinbefore quoted, that the sketch prepared by the witness Chambers at the time he testified is not sufficient to establish an earlier date of conception by appellee.

With reference to appellee's claimed reduction to practice, it is sufficient to say that, inasmuch as we hold that he has not established conception of the invention prior to August 22, 1932, he cannot be entitled to a reduction to practice prior to that time, and there is no evidence that he reduced it to practice between said date of August 22, 1932, and the filing date of his application.

There remains the question of whether appellee has established diligence in reducing the invention to practice from immediately prior to September 24, 1932, appellant's filing date, until appellee's constructive reduction to practice on November 3, 1932.

The only diligence claimed during this critical period is diligence by the attorneys of appellee's assignee in preparing his application for a patent.

It is conceded that there was no activity in the preparation of said application between August 22, 1932, and October 18, 1932. On this latter date Greenberg started work upon the completion of appellee's application, and finished it on October 28. The application was filed, as hereinbefore stated, on November 3, 1932. Due diligence, then, is established between October 18 and appellee's filing date. Therefore the question is whether the record establishes diligence in preparing said ap-

plication between immediately prior to September 24, 1932, appellant's filing date, and October 18, 1932.

■ It is elementary that, where diligence is involved in reducing an invention to practice, diligence must be established at and immediately before the opposing party entered the field, and it must continue until there is an actual or constructive reduction to practice by the party claiming diligence.

■ It is also well established that absence of activity during the critical period, if due to reasonable excuses or reasons for failure of action, will not be held to be lack of diligence.

■ If an attorney shall fail to exercise reasonable diligence in preparing an application, such lack of diligence will be imputed to his client, but the courts have been very liberal in their holdings with respect to lack of diligence of an attorney. Hull v. Davenport, 90 F.2d 103, 24 C.C. P.A., Patents, 1194.

■ An attorney must show reasonable diligence in preparing an application, and what is reasonable necessarily depends upon the facts in each particular case.

■ The fact that appellee's application lay in abeyance between August 22, 1932, and immediately before September 24, 1932, is of no importance except as it may have a bearing upon the subsequent acts with respect to the application.

Neither of the Patent Office tribunals discussed this question of diligence at length, the board contenting itself with the following statement: "There has been some question of diligence discussed but we are fully in accord with the examiner that the party Barton was diligent at the time the party Brown entered the field and that he continued to be so until his application was filed."

The witness Greenberg explained the lack of activity, during a portion of the critical period, in completing the application as follows: "At the time I took these various disclosures and partial rough draft from Mr. Goldsborough, I was carrying a particularly heavy docket of work, which included the preparation of new applications; prosecution of pending applications; and prosecution of pending interferences. The RCA Patent Department at that time, as at present, was divided into various Divisions, and I was assigned

to the Division of Mr. J. G. Norton. I have here the Division Reports of Mr. Norton's Division for July, August, and October, 1932. I have not been able to locate the report for September, 1932, although I have looked for it carefully. Reference to these Division Reports shows the condition of my docket, and it was this fact which prevented me from continuing the preparation of the Barton application until October, 1932.

"The RCA Patent Division, in addition to the monthly reports, also had each Assistant Patent Attorney keep a weekly report sheet, the purpose of which was to note 'Old Dockets', which means the prosecution of pending applications; 'New Dockets,' which means the preparation of new applications; and 'Other Work', which refers to Interferences and miscellaneous activities.

"I find, on reference to these weekly report sheets, that I was not able to get to the continuation of the preparation of the Barton application, RCA Docket 7107, until the week of October 17, 1932. Docket 7107 appears on Tuesday and Wednesday of that week, and appears again on Thursday and Friday of the week of October 24, 1932."

It appears from a letter in the record that appellee's case was given the docket number 7107 by Mr. Greenberg on August 22, 1932.

The weekly work sheets referred to by Mr. Greenberg were introduced in evidence as Exhibit 11. They cover the period between September 5, 1932, and the date of filing appellee's application. These sheets contain four columns, with the following headings:

"Day  Old Dockets  New Dockets  Other Work."

■ Exhibit 11 shows that Greenberg was steadily engaged throughout said period in working upon patent matters, for the most part upon dockets bearing lower numbers than the number of appellee's application, 7107. Presumably the work performed upon dockets bearing lower numbers was upon cases assigned to him before appellee's case was put in his charge. In so far as such work is concerned, we think it excuses lack of activity during said time with respect to appellee's application; but we find that during the week of September 19, 1932, he also performed work upon docket Nos. 7307, 7337, and 7338, the entire day of

September 19, 1932, being devoted to work on docket 7307. It is likewise a fair presumption that docket numbers higher than appellee's docket number related to cases assigned to Greenberg after appellee's case had been assigned to him.

For the week of October 3, 1932, said Exhibit 11 shows that on October 6 Greenberg did work on docket No. 7145; on October 7 he worked on docket Nos. 7372 and 7156; and on October 8 he worked on docket No. 7307. During these three days the sheets show that he also worked upon dockets having a lower number than 7107; for the week of October 10, 1932, Exhibit 11 shows that on October 13 he worked on docket No. 7188, and that on October 14 and October 15 he spent his entire time on docket No. 7340; on October 17 he did work on docket Nos. 7339 and 5640. It was not until October 18 that he began work upon appellee's application, and he finished the application on October 28. Between said dates Exhibit 11 shows that on four days he worked upon the application.

It thus appears that between September 19, 1932, and October 18, 1932, Greenberg worked upon eight cases bearing docket numbers higher than appellee's docket No. 7107, and that, as to one of such cases with higher docket numbers, 7340, he spent two entire days in working upon it.

There may, of course, have been good reasons why Greenberg employed so much of his time in working upon cases that presumably came to him subsequent to the time that appellee's case was assigned to him, but if there were such reasons the record does not disclose them, and there is no explanation whatever as to why appellee's application was held in abeyance while work was done upon later cases. No doubt Greenberg was following instructions in the work he did, but if appellee's application was laid aside without good cause, it is immaterial who was responsible therefor.

The case of Hull v. Davenport, supra, is very similar to the case at bar, although in that case it was not affirmatively shown that work was done upon cases assigned to patent attorneys later than the application involved in that case, while in the case at bar this is the presumption from the facts established.

In that case Hull was the first to conceive and the last to reduce to practice the invention involved. Both parties relied upon constructive reduction to practice. Hull filed his application on January 31, 1931, and the application of Davenport was filed on December 30, 1930. Hull was awarded a conception date of June 3, 1930, while Davenport relied upon his filing date for both conception and reduction to practice. The period during which Hull was required to exercise diligence was about five weeks. Hull was an employee of the Frigidaire Department of the General Motors Corporation. Shortly after his conception date the patent department of said corporation turned over to a firm of lawyers the papers, sketches, etc., necessary for the preparation of an application for patent. It was shown that this firm prepared a very large number of applications for patents for said corporation; that during the year 1930 the lowest number of cases of said corporation in the hands of said attorneys was 311 at the first part of the year, and that at the end of the year there were 406 inventions then awaiting action. The application as filed contained two pages of drawings and eleven pages of specifications, which included six claims. There was nothing else in the record as to what, if anything, was done with Hull's invention during the entire period that the matter was in the hands of the patent attorneys. There, as here, the excuse of non-action was the pressure of business of the attorneys. In our opinion we said, 90 F.2d 105:

"The Examiner of Interferences apparently took the position (although this is not the position taken by appellant's counsel in oral argument in this court) that all appellant had to do was to account for five weeks of time and that he had done so by showing that during that period of time the application was in the hands of the attorneys who prepared and filed the same. It is true that the critical period in the instant case in one sense is less than five weeks' time, but the rule contemplates that there must be diligence at the time or just before the second conceiver enters the field and that from this time continuing diligence must be shown or lack of it satisfactorily explained. The burden was upon the appellant to affirmatively show reasonable diligence. The only act of diligence shown by appellant or his attorneys during the entire seven months period preceding the beginning of the alleged critical date was appellant's submission to his attorneys of his invention for the

preparation of an application on June 3, 1930, or, as the record shows within a week thereafter.

"There is, therefore, no showing that appellant was diligently engaged in trying to perfect his invention at the time or just before the time when the appellee entered the field. We cannot presume under the facts in this case that appellant's attorneys were diligent at the time appellee entered the field nor are there any facts proven from which we may conclude that they were diligent at *any* particular time during the entire eight months period. Of course, they were using diligence when they were engaged in preparing the application, but when the preparation of it began has not been shown. *It is not shown that the several hundred cases in the attorneys' hands were taken up in their regular order or that appellant's case was not put to one side and others preferred over it.* [Last italics supplied.]

"We are of the opinion, therefore, that it cannot be logically concluded that the appellant has shown such diligence as the law requires, and the decision of the Board of Appeals is *affirmed.*"

It will be observed that in the case at bar it is shown that the cases were not taken up in their regular order, and appellee's case seems to have been laid aside and later cases preferred over it, without any explanation whatever of why this was done.

It thus appears that the facts in the case at bar indicate more strongly a lack of diligence than did the facts in the case of Hull v. Davenport, supra.

Appellee cites the case of Martus et al. v. Heise, 39 F.2d 715, 17 C.C.P.A. (Patents) 1083, in support of his contention that appellee's attorneys were reasonably diligent in completing his application. In that case we held that, under the facts shown, a delay of three months in preparing an application did not constitute lack of diligence. We there said [page 717]:

"The question of diligence is one of fact, and must be determined in each case in the light of the prevailing conditions and circumstances. There are no facts of record to indicate that appellee, as counsel for appellants argue, was deliberately inactive.

"Due entirely to the delay occasioned by the unfortunate conditions prevailing in the office of the patent department of his assignee *(which, in our opinion, have been satisfactorily explained),* the filing of appellee's application was delayed for about three months after appellants entered the field. * * *" (Italics supplied.)

It will be observed that we there said that the delay was satisfactorily explained, but in the case at bar there is no explanation of why appellee's application was passed over and work was done upon eight cases which presumably came to Greenberg after appellee's case was put in his charge.

It is true that the requirement of diligence extends over a period of only a little over five weeks, but the law requires that appellee must have been reasonably diligent at and immediately prior to appellant's filing date, September 24, 1932. If the attorney was doing nothing toward preparing the application at that time, or has not shown a reasonable excuse for failure of activity, appellee is chargeable with lack of diligence. Hull v. Davenport, supra. If there was lack of diligence at the beginning of the critical period, any diligence exercised by the attorney after that time, or the length of time thereafter that he was chargeable with diligence, is immaterial.

As hereinbefore indicated, neither of the Patent Office tribunals in their decisions discussed this question of diligence in detail, and we think they must have overlooked the fact that appellee's Exhibit 11 shows that Greenberg, during the critical period, worked on eight cases which, presumably, came to him later in point of time than did appellee's case, without any explanation or reason for so doing. Had they considered this fact, we think a conclusion would have been reached in harmony with the decision of another Board of Appeals in the case of Hull v. Davenport, which decision was affirmed by us and which has been hereinbefore discussed.

For the reasons hereinbefore stated, we conclude that the record fails to establish diligence upon the part of appellee in reducing his invention to practice, at and immediately prior to appellant's filing date, and the decision of the Board of Appeals is reversed.

Reversed.