44 C.C.P.A. (Patents)

James Stewart **WALKER**, Appellant,

v.

James **BAILEY**, Appellee.

Patent Appeal No. 6288.

United States Court of Customs and Patent Appeals.

June 17, 1957.

Norbert P. Holler, New York City, for appellant.

Bates & Willard, Hartford, Conn. (Lloyd G. Bates and John B. Willard, Hartford, Conn., of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges.

WORLEY, Judge.

This is an appeal by James Stewart Walker from the decision of the Board of Patent Interferences of the United States Patent Office, awarding priority of invention of the subject matter of Interference No. 86,646 to the senior party James Bailey.

The invention in issue is a process of producing hollow articles of thermoplastic resin material. In carrying out the process each of the parties employs a vertically extending mandrel provided with an axial air passage and having an external shape corresponding to the desired interior shape of the mouth of the hollow article to be molded. Cooperating with the mandrel are two horizontally separable mold sections which, when closed about the mandrel, provide a hollow mold cavity corresponding in shape to that of the article to be molded. In the closed position of the mold the mandrel extends upwardly into the cavity and terminates therein, while the lower portions of the mold surround the man-

drel, leaving just enough space for the molding of the neck or mouth portion of the hollow article between the sections and the mandrel.

When an article is to be molded, the mold sections are separated and a charge of resin material is extruded downwardly about the mandrel, after which the mold sections are closed, thus severing the charge from the parent body of material. Air under pressure is then supplied through the passage in the mandrel, thus blowing the material outwardly into contact with the walls of the mold cavity, and giving it the desired shape. When the material has solidified, the mold sections are separated and the article is removed.

The interference issue consists of a single count which originated in the application of Bailey and reads as follows:

"1. The process of producing hollow articles of thermoplastic resin material which comprises extruding a charge of said material from an extruder orifice into an open multisection mold and about a mandrel, severing the charge from the parent body of material in the extruder orifice at a point remote from the mandrel, closing the mold sections on a portion of said charge and about said mandrel to press mold said portion between said mold sections and mandrel, and introducing air pressure into said charge and blowing a portion of said charge into molding contact with said mold."

Walker's application was filed July 26, 1951, and Bailey's September 6, 1950. Bailey is, therefore, the senior party. However, the board accorded Walker the benefit of his British provisional application filed July 27, 1950, and that holding is not disputed here.

It is contended by each of the parties that the burden of proof rests upon his opponent. Since Walker has been accorded an undisputed date of conception and constructive reduction to practice as of July 27, 1950, the date his British provisional application was filed, and since that date is prior to Bailey's filing date of September 6, 1950, it is incumbent on Bailey to establish invention prior to July 27, 1950.

Walker did not take testimony and is, therefore, restricted to the date of July 27, 1950. Bailey alleges no actual reduction to practice and is accordingly restricted for constructive reduction to practice to his filing date, September 6, 1950. The sole issue to be decided, therefore, is whether Bailey has satisfactorily shown that he conceived the invention in issue prior to July 27, 1950, and that he exercised due diligence in the preparation and filing of his application from a time just prior to July 27, 1950, until September 6, 1950—a period of approximately six weeks.

Bailey testified that throughout 1950 he was employed by the Plax Corporation, a subsidiary of the Emhart Corporation, which was formerly the Hartford Empire Company. He stated that on or about March 31, 1950, he prepared a drawing and description (Exhibit 1) bearing the date March 31, 1950. As correctly held by the board, that exhibit contains a disclosure which complies with the terms of the count.

Bailey further testified that Exhibit 1 was forwarded to one John B. Willard, a patent attorney employed by the Emhart Corporation, who handled the patent business of the Plax Corporation, to which the Bailey application is assigned.

Willard testified that he received Exhibit 1 in due course, although he did not fix the exact date of its receipt and it does not bear a receiving stamp date; and that on the basis of that exhibit, he prepared a preliminary draft of a specification which was typed on June 14, 1950, and is in evidence as Bailey's Exhibit 2. That exhibit does not include a drawing, but contains a description corresponding closely to that of the specification of the Bailey application and fully discloses the subject matter of the count.

We are of the opinion that Exhibits 1 and 2, together with the testimony of Bailey and Willard, are suffi-

cient to establish that Bailey had conceived the invention in issue and communicated it to Willard at least as early as June 14, 1950. The fact that Exhibit 1 discloses only one of the two embodiments of the invention which are disclosed by Exhibit 2 and by the Bailey application is not material, since the count is supported by each embodiment.

Willard testified that Exhibit 2 and a final draft of the Bailey specification and claims, introduced as Exhibit 4, were completed before the application drawings were prepared. Counsel for Walker contends that such a procedure is so highly improbable that Willard's testimony cannot be accepted as accurate. While it does not seem that preparation of the specification before the drawings would be the normal procedure, and Willard admitted that it was "a little more difficult" than if the drawings had been prepared first, we do not think that circumstance necessarily discredits Willard's testimony.

It appears that Bailey's Exhibit 1, which includes a drawing, was available to Willard when the draft specifications were prepared. It also appears that Willard's time records show that he was working on the Bailey invention for substantial periods of time prior to the alleged dates of completion of the draft specifications, Exhibits 2 and 4.

Willard testified that after the final draft of the specification, Exhibit 4, was completed on July 21, 1950, he gave instructions to the draftsman, one James Foran, to prepare the drawings, and that Foran, as shown by his time records, began work on them July 24, 1950, and completed them on August 7, 1950, after working on them for at least a part of each of the intervening working days. Willard testified that Foran worked under his supervision and that they discussed the drawings at length while they were in preparation. He added that the drawings were checked against the specification by one Robert J. Donoghue, the chief draftsman, on August 17, 1950, with Donoghue's time record offered as evidence in support of that testimony.

Willard further testified that the application papers were executed by Bailey on August 23, 1950; that a check for the filing fee was issued August 29; and that the application was forwarded to the Patent Office on September 5, receiving a filing date of September 6. September 4, 1950, was Labor Day.

The record shows definite activity by Willard on Bailey's behalf in completing the final draft of the specification and beginning the drawings on July 21 and 24, 1950, respectively. Such activity took place just prior to July 27, 1950, the date of Walker's entry into the field.

We find no sufficient reason for rejecting Willard's testimony, as urged by appellant, as to those facts relating to the preparation of the Bailey application which were within his personal knowledge. It remains to be considered whether such facts are sufficient to show diligence during the period beginning on July 21, 1950, when the final draft of the specification was completed, and ending on September 6, 1950, when the application was filed.

Willard had personal knowledge of ordering Foran to prepare the drawings on July 24, 1950, and he testified that he engaged in continual discussions with Foran concerning the drawings between that date and August 7, 1950, when they were completed. While the period required for completing the drawings was comparatively long, we agree with the board that the rule of diligence does not require that the draftsman employed be "fast of perception and speedy in execution." Since it appears that Foran was working on the drawings between July 21 and August 7, 1950, we are of the opinion there was no lack of diligence during that period. As stated by Willard, and as indicated by the application papers themselves, Bailey's application was executed by him on August 23, 1950. Considering the facts that it was necessary to obtain a check from the treasurer of the Plax Corporation for the filing fee, that the Labor Day week-end intervened, and that Willard was on vacation from Au-

gust 21 through September 4, 1950, the delay of two weeks in filing the application after it was executed does not appear to be unreasonable.

There remains to be accounted for only the remaining period between August 7, 1950, when the drawings and specification had both been completed, and August 23, 1950, when Bailey executed the application. During that period it was necessary for someone to check the drawing against the specification and to transmit the papers to Bailey for his consideration and execution. No doubt that could have been done considerably earlier than August 23, 1950, if it had been given precedence over everything else. However, since Bailey's application appears to have been only one of a number of things being worked on in the Emhart Corporation patent department, we do not think that delay unreasonable.

■ Reasonable diligence does not require a patent attorney engaged in a normal practice to concentrate on any one application to the exclusion of others. Martus & Becker v. Heise, 39 F.2d 715, 17 C.C.P.A., Patents, 1083; and Farmer and Thomas v. Schweyer, 68 F.2d 961, 21 C.C.P.A., Patents, 865. As was said in Hull v. Davenport, 90 F.2d 103, 105, 24 C.C.P.A., Patents, 1194, "Courts have been liberal in their holdings with respect to the length of time a busy patent attorney may take in the preparation and filing of patent applications."

In the instant case there is nothing to show that there was any unreasonable or unusual delay in the preparation and filing of the Bailey application, and Willard testified that work on it was never suspended in favor of any later filed case.

We are of the opinion the record satisfactorily establishes that reasonable diligence was exercised in the preparation of the Bailey application throughout the period from July 21, 1950, to September 6, 1950, when the application was actually filed.

■ Counsel for Walker raises a number of objections to the evidence on be-

half of Bailey. For example, it is alleged that since Willard is employed by the assignee of the Bailey application he is an interested witness and, therefore, "neither his oral testimony nor his time sheets * * * can be given any credence." In our opinion that is not an accurate statement of the law. The fact that a witness has an interest in the outcome of a case is to be considered in evaluating his testimony, but it does not necessarily discredit it. In the present case it does not appear Willard is in a position to derive any direct benefit from the outcome of the interference and, accordingly, such interest as he may have does not materially lessen the weight of his testimony. The testimony of the patent attorney who prepared an application is ordinarily accepted as to the circumstances surrounding its preparation, and in many cases it would be difficult or impossible to make a satisfactory showing of diligence in preparing and filing an application by any other means. See Russell v. Sisson, 55 App. D.C. 401, 4 F.2d 1014; Farmer and Thomas v. Schweyer, supra; and Brown v. Barton, 102 F.2d 193, 26 C.C.P.A., Patents, 889. We accordingly find that Willard's testimony was competent and that it is to be accepted in the absence of any good reason for discrediting it.

■ Counsel for Walker also stresses the failure of Bailey to call as witnesses Foran, Donoghue, and Willard's secretary, who typed Exhibits 2 and 4, despite the fact they were apparently available. We agree with the board that it would have been desirable to have the testimony of those witnesses, but we concur with the conclusion that the failure to produce them is not fatal to Bailey's case. Willard had first-hand knowledge of the preparation of Exhibits 2 and 4, and he supervised and consulted with Foran during the making of the drawings. It is not clear that Willard had any personal knowledge of the checking of the drawings by Donoghue on August 17, 1950, but that is not critical to a showing of diligence on behalf of Bailey.

■ Criticism is also made by counsel for Walker of the use of the time sheets of Willard, Foran, and Donoghue. It is not necessary to determine whether those sheets were admissible as evidence under the Shop Book Rule, as alleged by counsel for Bailey. The sheets relating to Willard and Foran were properly used by Willard to refresh his recollection as to matters of which he had first-hand knowledge, and we have considered them only in that connection. With respect to Donoghue, the matter is more questionable but, as above noted, Donoghue's participation is not essential in determining the issue of diligence.

■ It is further urged on behalf of Walker that Bailey should be held to an unusually high degree of proof because of the fact that Walker, having made the invention abroad, is restricted to his British filing date. No authority has been cited in support of that proposition and we know of none. Bailey is in no way responsible for the fact that Walker made the invention abroad, and it does not seem proper to penalize him because of it.

As above indicated, we agree with the board that there was apparently pertinent evidence available to Bailey which was not presented by him. The issue here, however, is not whether Bailey has presented a perfect case, but whether he has presented a sufficient one. The failure of a party to produce pertinent evidence may, under certain circumstances, justify the presumption that, if produced, it would be adverse to him. On the other hand there is obviously a limit to the amount of merely cumulative evidence which it is desirable to produce, and a party should not necessarily be penalized because he fails to exhaust all possibilities of producing pertinent evidence. Under the circumstances of the instant case we are of the opinion that no adverse inference may properly be drawn from Bailey's failure to produce additional witnesses.

The testimony and records presented on behalf of Bailey are of such a nature that it would be difficult to reject them without holding that Bailey and Willard had deliberately given false testimony, and that the exhibits had been falsified. We are of the opinion the record does not justify such a conclusion.

We find no reason for reversing the holding of the board that Bailey was the first to conceive the invention in issue and exercised reasonable diligence in reducing it to practice.

The decision of the Board of Patent Interferences is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate herein in place of COLE, J., absent because of illness.