52 CCPA

**Anthony F. D'AMICO, Appellant,**

v.

**Fuji KOIKE, Appellee.**
**Patent Appeal No. 7305.**

United States Court of Customs
and Patent Appeals.
July 1, 1965.

Chester A. Williams, Jr., Edward L. Bell, New York City, for appellant.

Joseph C. Sullivan, Daniel H. Kane, New York City, for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Board of Patent Interferences in Interference No. 91,541 awarding priority to the junior party, Koike, in an interference between application serial No. 588,-070, filed by Koike on May 29, 1956, and application serial No. 551,090, filed by D'Amico on December 5, 1955.

The invention is an improvement in a cam-controlled zigzag sewing machine and is defined in two closely related counts. Count 1 reads:

1. In a sewing machine having a frame, a needle-bar mounted in said frame, for lateral oscillation and for endwise reciprocation, a main shaft journaled in said frame for rotation, operative connections between said main-shaft and said needle-bar for imparting endwise reciprocation to said needle-bar upon rotation of said shaft, a pitman operatively connected to said needle-bar for imparting vibration thereto upon actuation of said pitman, and means for actuating said pitman during operation of the sewing machine comprising a plurality of axially aligned stitch-pattern cams rotatably carried by said frame with the axis thereof extending in the same direction as the axis of the main shaft, drive connections between said main shaft and said cams for rotating said cams upon rotation of said main shaft, a pivot shaft journaled in said frame on an axis parallel to the axis of said cams, a cam follower mounted on and slidable along said pivot shaft for operatively engaging said cam follower with a selected one of said cams, said cam follower being keyed to said pivot shaft for unitary turning, means for biasing said cam follower into operative engagement with the periphery of a selected one of said cams, said cams imparting a pat-

tern of oscillation to said cam follower and said pivot shaft upon rotation of said cams, and operative connections between said pivot shaft and said pitman for actuating said pitman upon oscillation of said pivot shaft.

According to the board, the application of Koike is assigned to Nippon Sewing Machine Co., Ltd., Horita-dori, Mizuho, Japan, and that of D'Amico appears to be owned by The Singer Manufacturing Company, Elizabeth, New Jersey.

Only D'Amico took testimony. Koike relies for priority on his Japanese application, serial No. 28,473, filed on October 29, 1955, to which date he is restricted. D'Amico conceded Koike's right to that benefit and the board accordingly adjudged Koike to have conceived and constructively reduced the invention to practice on October 29, 1955.

D'Amico makes no claim to an actual reduction to practice, his case resting squarely upon alleged proof that he conceived the invention before October 29, 1955, and was diligent from a time prior to that date until his own constructive reduction to practice by filing his U.S. application on December 5, 1955.

The board found from the testimony of D'Amico's witnesses that he conceived the invention "some months prior to September 23, 1955," and this finding is not in dispute. Though D'Amico need only show diligence from a time just prior to October 29, 1955, until his filing date of December 5, 1955, the date of September 23, 1955, becomes significant. It is the last day prior to appellee's entering the field on which appellant can show a particular activity on a particular day, except for a notebook entry presumably made on October 27, 1955. Accordingly appellant asks us to consider that September 23 activity.

■ Turning first to the later part of the "critical period," the record shows, and appellee has not disputed, that on November 22, 1955, D'Amico's patent application was sent from the Patent Department of the Singer company, located at Elizabeth, New Jersey, to Bridgeport, Connecticut, for execution by the inventor, who was working there at the time and that the executed application and assignment were mailed back to the Patent Department on November 29, 1955. As indicated, this application was accorded a filing date of December 5, 1955. Although the board did not specifically hold that reasonable diligence was shown during the period November 22 through December 5, neither did it question the proofs relative thereto, and for this reason, plus the fact we feel common sense precludes any other result, we find reasonable diligence during this period.

The issue is therefore a narrow one: has D'Amico proved diligence from a time just prior to Koike's date of October 29, 1955, until November 22, 1955, or, in the alternative, has a reasonable excuse for failure to act during part or all of this period been shown?

Appellant has proved, by well documented evidence, that as of September 23, 1955, the patent application drawings had been finished, including inking and lettering, two of the six drawings having been "lettered and finished" on that very day, and that the specification was in *draft* form. The time between that date and November 22, 1955, according to the testimony of Mr. Bell, the patent attorney in charge of the D'Amico application, "would normally have been occupied by handling and completion of the application in the Patent Department, which would include consideration of the application by a patent attorney in an administrative position, final preparation of the finished application papers, and final checking of the application."

Regarding the "consideration of the application by a patent attorney in an administrative position," the record contains the affidavit of Mr. Breen which states:

* * * In the normal course, he saw and approved the application when the specification thereof was in draft form and the drawings were in finished form.

870

Also of record is the affidavit of Mr. Pecina, a former Singer employee, who in 1955 was head of the Drafting Section of the Patent Department and whose responsibilities included, in addition to making patent drawings, the keeping of various records regarding his employer's patents, patent applications, and matters relating thereto. Included among the records he maintained was a so-called "Black Book," arranged in sections with each section comprising cases assigned to one attorney, and containing detailed information about inventions submitted to the Patent Department, reports as to their patentability, and other information, the records being "continuously maintained * * * until the patent application was filed or until it was determined that no application was to be filed." The affiant says:

> * * * He can and does identify the item appearing in D'Amico Exhibit No. 17B as "1" under the heading "(B' Port Matters)" as the same item referred to above in D'Amico Exhibit No. 17A and that the notation "Case completed" was used by him to indicate that as of the date October·27, 1955, the patent specification relating to this invention had been completed by the attorney, the case had been returned to the draftsman who had completed inking, numbering and effecting whatever corrections that were necessary, and that the application was then at least in the process of being prepared in finished form.

We have searched the record, but find no other evidence of activity during the period September 23, 1955, to November 22, 1955.

The gist of appellant's arguments seems to be that, notwithstanding failure of the record to show specific acts to have been done by named persons on known days, the record does establish reasonable diligence for a period of two months by reason of its showing that work remained to be done on the application on September 23, and that somebody obviously did it sometime during that period, otherwise the application would not have been filed. Furthermore, according to appellant, it is clear that Breen considered and approved the application *after* September 23 because he said the drawings were "finished" and the record shows the drawings were not in a finished state until that day. More specifically, the appellant's brief says:

> It is a readily accepted fact that drawings are not letter-perfect in the first instance. It is also obvious that an attorney in a supervisory position who is considering an application prepared by another and who has numerous suggestions to be incorporated therein would discuss the application with the person who prepared the application and would return it to him for his consideration with the reference to any corrections or additions suggested by the reviewing individual and that the first attorney may not, because of a normal work load, be in a position to attend to this immediately.

> It is equally apparent that clerical operations must be performed in some logical sequence, and that various items may have to wait their turn.

The findings of the Board of Patent Interferences seems to be to the effect that a party in interference must at his peril, provide a well-documented explanation for any act which could be performed in less time than it actually was. In this case, the testimony on behalf of the party D'Amico was taken some eight years after the events involved. Necessarily, the passage of time and the innumerable intervening applications has obscured the specific facts as they existed at the time those events took place. Eight years is a long time but it is not particularly unusual with respect to the prosecution of an involved application in a complex art, which application is later involved in an interference proceedings. Since it is not normally possible after eight years

to recall how much time was consumed in a particular act or to reconstruct the circumstances which would explain and excuse the fact that a particular act was not performed as expeditiously as it might have been, the only alternative would be to maintain an elaborate record system which would be very burdensome and uneconomical. It is submitted that a reasonable and practical policy is not only available but is in fact in accordance with the decisions of this Court.

We agree with the general principles which appellant seems to be advocating, namely, that a *rule of reason* should be followed in cases of this kind and that courts should be somewhat liberal in determinations of diligence of attorneys and of their clerical and stenographic staffs, since the law cannot presume that such people can immediately begin and expeditiously perform their duties as soon as work appears on their desks. Nevertheless we think that appellant is attempting to use those principles as substitutes for record evidence, of which there is very little.

As we view this appeal, appellant asks us to rule that even after a patent application is in draft form, with finished drawings, the acts of (1) considering and approving the application by a supervisory attorney, (2) final checking, (3) placing the approved and checked draft application in final form, and (4) preparing the formal papers for execution constitute "reasonable diligence," within the meaning of 35 U.S.C. § 102(g), if performed within a period of two months.

Obviously such a ruling must depend on a great number of circumstances such as, but not limited to, complexity of the invention, length of the application, detail of the drawings, experience, workload and availability of the attorney, availability of the draftsman and the inventor during the period involved, size of the attorney's staff, procedure and policy in reviewing the application, type and thoroughness of the review, number of people involved in preparing the application and their location, and the number of changes which the subject application underwent.

Certainly, evidence as to all these factors need not be of record; possibly evidence as to only one or two would suffice in certain cases. However, in the present appeal we know essentially nothing about the handling of the application during the two-month period except that (a) Breen did in fact "consider and approve" the application, and (b) the other work, i. e., checking, placing in final form, and preparing the formal papers, was done sometime. There is no end to the inferences which might be drawn from the scanty record before us and we prefer not to indulge in them, but we cannot overlook the fact that Koike's priority date falls nearly midway in this two-month period and it is certainly *possible* that all of D'Amico's activity took place during the period prior to October 29, whereupon the application lay idle for nearly one month awaiting execution by the inventor. Be that as it may, *that* month is *the* critical month and the record contains no evidence, even of the weakest sort, whether in it anything occurred.

We have considered the authorities cited by appellant to support his position, as well as others, but find none of them to be in point. Specifically, Walker v. Bailey, 245 F.2d 486, 44 CCPA 998, urged by appellant as presenting a case parallel to the present facts is considered distinguishable by reason of positive evidence having been there presented of specific acts *during the critical period*, including some activity within the two and one-half week period immediately prior to sending the application for execution.

The decision of the board is affirmed.

Affirmed.

WORLEY, C. J., concurs in the result.